**Richard FRAIGE and Vinyl Products Manufacturing, Inc., Plaintiffs–Appellants,**

v.

**AMERICAN–NATIONAL WATER-MATTRESS CORPORATION, Defendant–Appellee.**

Nos. 91–1149, 92–1152.

United States Court of Appeals, Federal Circuit.

June 17, 1993.

Michael J. Cronen, Law Offices of Harris Zimmerman, Oakland, CA, argued for plaintiffs-appellants. With him on the brief was Harris Zimmerman.

Gabor L. Szekeres, Klein & Szekeres, Irvine, CA and James B. Andres, Newport Beach, CA, argued for defendant-appellee.

Before ARCHER, LOURIE and RADER, Circuit Judges.

ARCHER, Circuit Judge.

Richard Fraige and Vinyl Products Manufacturing, Inc. (Vinyl Products) appeal the October 1, 1990 Order of the United States

District Court for the Central District of California denying Vinyl Products' Motion to Set Aside Judgment of Patent Invalidity under Rule 60(b) of the Federal Rules of Civil Procedure (the Order). Vinyl Products also filed a Motion to Reconsider the Order, which the district court denied on November 26, 1990 (the Reconsideration Order). We reverse and remand with directions to the district court to grant a new trial on the issue of the validity of U.S. Patent No. 4,301,560.

## I.

Vinyl Products sued American–National Watermattress Corporation (Am–Nat) for infringement of U.S. Patent No. 4,301,560 (the '560 patent). The '560 patent relates to a waterbed mattress (watermattress) containing certain types of fiber for the purpose of reducing wave motion within the watermattress. After bringing suit, Vinyl Products moved for a preliminary injunction. As found by the district court, "false and forged documentation was submitted to the court by [Am–Nat's] president in his declarations in opposition to the motions for preliminary injunction at the start of this case."

As part of such false and forged documentation, Am–Nat's president, Craig Miller, altered, or had altered, a waterbed mattress advertisement of Am–Nat's predecessor to show the presence of a fibrous material inside the mattress. This false advertisement, purporting to predate the '560 patent application by several years, was then shown to witnesses who testified at the preliminary injunction hearing. In addition, in his declarations in opposition to the motion for preliminary injunction, Miller attested to the authenticity of the advertisement that had been altered and falsely stated that copies of that advertisement (as altered) had been distributed to customers several years before the filing date of the '560 patent application. Moreover, Miller's declaration falsely stated

that he had been able to locate a production order and a purchase agreement for one of "about 200" of the fiber filled mattresses that according to Miller's declaration Am–Nat's predecessor had sold more than one year before the '560 application was filed. The district court denied Vinyl Products' motions for preliminary injunction.

Vinyl Products became aware of Miller's fraud while the case was being tried to the jury, and attempted on several different occasions during the trial to present documents including a report prepared by Vinyl Products' experts and testimony on the issue of fraud. Am–Nat's attorneys denied there had been any misconduct and objected to the attempts by Vinyl Products to present such evidence. In doing so, Am–Nat's attorneys represented to the court that their expert's testimony would refute the fraud allegations and report. The district court decided to exclude all evidence as to the false and forged documentation during trial but ruled that it would hear Vinyl Products' evidence on the matter after the trial.

The jury thereafter returned special verdicts, finding infringement, but also finding the patent invalid. Four special verdicts of invalidity were grounded on 35 U.S.C. § 102, one on § 103, and two on § 112. Judgment was entered on the verdicts.

In the post-trial hearing on the allegations of fraud, the court found that fraud had been practiced by Am–Nat's president and ruled that sanctions would be imposed against Am–Nat under Rule 11, Fed.R.Civ.P.[1] At that hearing Am–Nat's attorneys admitted that they did not have any expert testimony—although this had been their representation to the court during trial—to refute Vinyl Products' proof of fraud and document falsification. After this post-trial hearing, the court also referred the matter of Miller's misconduct to the United States Attorney,

1. Subsequently, the court set the amount of sanctions to be awarded to Vinyl Products at $116,-905.75, to cover its "costs of detection of the alterations, of proving that the alterations have occurred (including costs of being prepared to prove same at trial had the court allowed the same), and the costs of pursuing this Rule 11 sanctions motion." In describing the back-

ground to the award of Rule 11 sanctions, the court stated: "Defendant's president and principal owner foolishly tried to produce forged and faked documents in an attempt to defeat the motion for preliminary injunction. This attempt was detected by plaintiff, who has been at some expense to detect the forgery and to be able and ready to prove it."

who declined prosecution for the stated reason of inadequate resources.

Vinyl Products filed a motion under Rule 60(b), Fed.R.Civ.P., to set aside the judgment of patent invalidity. Although the district court in its Order of October 1, 1990 found that Am–Nat's president had forged documents and filed false declarations which "went directly to the question of whether a particular waterbed manufactured by defendant's predecessor contained wave absorbing fiber at a time which would invalidate plaintiff's patent," it concluded that Vinyl Products' Rule 60(b) motion should be denied on two grounds. First, because of the court's belief (at that time) that the tainted evidence was neither presented at trial, nor shown to any witnesses who testified at trial, the court was "not satisfied that such action by defendant's president carried over to or caused a miscarriage of justice at the trial." The court believed that it had "kept the evidence about the alterations out of the trial" and that witnesses called to testify were not those who had been shown the forged documents by Am–Nat's president. Second, the court denied the motion because "aside from the jury's findings on use of the invention more than one year before the filing of the patent application, there were two other grounds, independently sustainable, on which the jury made findings which support the judgment of patent invalidity." The court did not otherwise indicate what it considered these two other grounds to be, but in their arguments the parties are in apparent agreement that they were obviousness and lack of adequate description under 35 U.S.C. §§ 103 and 112.

Vinyl Products moved for reconsideration of the Order denying its motion to set aside the judgment. In the Reconsideration Order the court again denied the motion, but on different grounds. The court stated that Vinyl Products had demonstrated that certain of the witnesses who testified had seen the forged advertisements and other material. The court, however, faulted counsel for Vinyl Products for not cross-examining Am–Nat's witnesses as to whether their "memory was inaccurate because it was based unknow-ingly on refreshment of recollection by a forged document."

## II.

■ An order denying a motion to set aside a judgment under Rule 60(b) is reviewed under an abuse of discretion standard. *Bunch v. United States,* 680 F.2d 1271, 1283 (9th Cir.1982). An abuse of discretion exists when (1) the lower court's decision is based on an erroneous conclusion of law, or (2) on a clearly erroneous finding of fact; (3) the record contains no evidence on which the lower court rationally could have based its decision; or (4) the court's decision is clearly unreasonable, arbitrary or fanciful. *Heat & Control, Inc. v. Hester Indus. Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986); *accord Hunt v. National Broadcasting Co.,* 872 F.2d 289, 292 (9th Cir.1989); *Abatti v. Commissioner,* 859 F.2d 115, 117 (9th Cir.1988); *Hill v. United States Immigration & Naturalization Serv.,* 775 F.2d 1037, 1040 (9th Cir.1985).

Under Rule 60(b), the court may, upon such terms as are just, relieve a party from a final judgment if it finds

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... This rule does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court.

Vinyl Products sought relief under the fraud provision of Rule 60(b)(3).

■ The first ground stated in the district court's Order for denying Vinyl Products' motion to set aside the judgment was that the document alterations and misrepresentations did not infect the trial. The court was mistaken in its initial belief as reflected in the Order that none of the witnesses called to testify by Am–Nat had seen the tainted evidence. The court in the Order said: "Plaintiff now says that the forged documents were used by plaintiff's president to 'assist' the memory of witnesses. However, the only instances shown of this effort involved witnesses who were not called to testify by defense counsel." In its Reconsidera-

tion Order, however, the court specifically found that some of Am–Nat's trial witnesses had indeed seen the altered documents, as follows: "Plaintiff's research has demonstrated (not known except for one witness on the first motion or by the court at trial) that certain of the witnesses who testified had seen the forged advertisements and other material." [2]  Thus, the court's conclusion in its Order that the trial was free of taint was based on clear factual error.

The district court in its Order also denied Vinyl Products' motion on the ground that the fraud could not have affected two of the jury's findings of invalidity.  As discussed, *infra*, the court's determination in this regard is incorrect as to the obviousness finding and is essentially indeterminable as to the other invalidity finding.  But even if we assume that the fraud did not directly affect some of Am–Nat's invalidity defenses, we nevertheless conclude that the judgment cannot stand.  *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).[3]

In *Hazel–Atlas* the patent was obtained by practicing a fraud on the patent office.  To overcome cited prior art, "experts" were enlisted by "Hartford's officials and lawyers" to publish an article stating that the invention of the patent was a remarkable advance in the art.  This publication was also urged upon the Third Circuit for the purpose of reversing the district court's decision in an infringement action.  Some nine years after entry of judgment based on the Third Circuit's mandate, the adjudged infringers discovered the fraud and petitioned the Third Circuit for review of its decision.  The Court of Appeals denied relief on the grounds that the fraud was not newly discovered, that it did not affect the primary basis of its earlier

decision, and that the court lacked power to set aside a decision rendered in an earlier term of the court.

The Supreme Court reversed the Third Circuit and ordered it to direct the trial court to set aside the judgment.  The Court based its decision on three grounds.  First, the Court determined that the fraud was clearly established.  The Court stated:

> This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury.  Here, ... we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.

*Id.* at 245–46, 64 S.Ct. at 1001.  Here, as in *Hazel–Atlas*, the court's findings, and the sanctions imposed on Am–Nat, show that Miller's scheme was deliberately planned and carefully executed for the purpose of interfering with the judicial process, not only at the preliminary injunction hearing stage but also at trial.

Second, in *Hazel–Atlas* the Court noted that fraud, especially in a patent case, is a matter of public concern, with effects extending beyond the parties to the litigation.

> This matter does not concern only private parties.  There are issues of great moment to the public in a patent suit.  Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.  Surely it cannot be that preservation of the integrity of the judicial process must always wait

---

2. In its moving papers Vinyl Products demonstrated that witnesses Donald Houser, Edward Ramos, Edward Womack, and Warren Peterson had all seen the altered documents before testifying at trial.  One witness, Mr. Houser, in his trial testimony specifically referred to the false advertisement (the advertisement of Am–Nat's predecessor that had been changed to show a watermattress containing fibrous material) and relied on the specific parts of that advertisement that had been altered when he testified.  Further, during the hearing on the reconsideration mo-

tion the court said: "I had not realized that these other witnesses had also been shown.  Maybe it was my fault for not reading carefully enough in the motion papers...."

3. Although *Hazel–Atlas* was not based on fraud arising during the course of an infringement action, the principles laid down by the Supreme Court are equally applicable here.  *Accord Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Id.* at 246, 64 S.Ct. at 1001 (citations omitted). Like *Hazel–Atlas*, Am–Nat's fraudulent conduct was a wrong against the judicial system as well as against Vinyl Products. Also, the fraud in this case concerned the validity of an issued patent, which is a matter of public concern. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, ⸺ U.S. ⸺, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993); *Hazel–Atlas*, 322 U.S. at 246, 64 S.Ct. at 1001; *Mercoid Corp. v. Mid–Continent Inv. Co.*, 320 U.S. 661, 665–66, 64 S.Ct. 268, 271–72, 88 L.Ed. 376 (1944); *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942).

The final basis for the Court's decision in *Hazel–Atlas* was that a court cannot accurately assess the effects of fraudulent conduct. Therefore, a court should presume that the defrauding party would commit the fraud only when confident of its effectiveness.

> Whether or not it was the primary basis for that ruling, the article did impress the [Circuit] Court, as shown by the Court's opinion. Doubtless it is wholly impossible accurately to appraise the influence that the article exerted on the judges. But we do not think the circumstances call for such an attempted appraisal. Hartford's officials and lawyers thought the article material. They conceived it in an effort to persuade a hostile Patent Office to grant their patent application, and went to considerable trouble and expense to get it published. Having lost their infringement suit based on the patent in the District Court wherein they did not specifically emphasize the article, they urged the article upon the Circuit Court and prevailed. They are in no position now to dispute its effectiveness.... Truth needs no disguise.

*Hazel–Atlas*, 322 U.S. at 246–47, 64 S.Ct. at 1002.

■ Here, Am–Nat is likewise in no position to dispute the effectiveness of its fraud. The district court should not have tried to evaluate its effect on the jury and its findings as to the patent's validity. It was "impossible accurately to appraise," *id.* at 276, the extent to which the jury relied on testimony tainted by the false and forged documentation. When it became known that the jury was presented testimony based on fraudulent documentation, where that testimony was relevant and material to the issue of patent validity, all of the jury's invalidity findings became suspect. *See generally Minneapolis, St. Paul & Sault Ste. Marie Ry Co. v. Moquin*, 283 U.S. 520, 521–22, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931) (litigant who engages in misconduct "will not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent"); *In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir.1987) (where there is proof of an intentional scheme of misconduct, damage from the misconduct is presumed).

The district court accepted that the jury's special verdicts of invalidity under 35 U.S.C. § 102 could not stand, but ruled that two other grounds supported the judgment of patent invalidity. The tainted evidence on which the jury's verdicts of anticipation under section 102 could have been based, i.e., the false and forged documentation indicating fiber filled watermattresses were in existence and being sold more than one year prior to the filing of the patent application, was also extremely pertinent to the jury's obviousness determination under 35 U.S.C. § 103. Thus, the jury's special verdict of invalidity for obviousness, potentially based in whole or in part on the evidence affected by Am–Nat's misconduct, was not a valid independent ground for the court to sustain the judgment of patent invalidity. The effect of the tainted evidence on the section 112 defense,[4] while less certain, cannot be ascertained and therefore is similarly not a basis

---

4. Although the record shows that the 35 U.S.C. § 112 defense was abandoned at trial by Am–Nat, no instructions were given the jury, and it returned a special verdict of invalidity under that section.

for denying the Rule 60(b)(3) motion for relief from the patent invalidity judgment.

Thus, it was an abuse of discretion by the district court to allow any of the special verdicts on patent invalidity to stand; a new trial is required. Any other decision by this court would condone, and possibly encourage misconduct of the type here involved, especially by a litigant who has only marginal invalidity defenses.

We conclude that the district court abused its discretion in denying Vinyl Products' Motion to Set Aside the Judgment of Patent Invalidity under Rule 60(b) because denial was based on clear factual and legal errors. The district court's Order of October 1, 1990

is reversed and the case is remanded for a new trial limited to whether the '560 patent is invalid.[5]

## COSTS

Costs are awarded to Vinyl Products.

*REVERSED* and *REMANDED.*

---

5. Because we reverse the Order, the district court's Reconsideration Order need not be considered. As we have previously noted, however, the district court denied Vinyl Products' motion for reconsideration because it found that Vinyl Products' counsel failed to cross examine witnesses about tainted evidence during trial. We are not convinced that Vinyl Products' counsel voluntarily chose not to press the fraud issue at trial. Am–Nat's counsel protested the admission of such evidence and argued that Am–Nat's expert's testimony would exonerate Am–Nat. Counsel admitted after trial, however, that there was no exculpatory evidence. The unsupported protestations of Am–Nat's counsel are an example of tactics that were used to hinder Vinyl Products' presentation and the district court's consideration of the fraud issue during the trial of this case.