Opinion for the court filed by Circuit Judge STOLL. Dissenting opinion filed by Circuit Judge DYK.
STOLL, Circuit Judge.
Rembrandt Vision Technologies, L.P. (“Rembrandt”) appeals from the district court’s denial of Rembrandt’s motion for a new trial under Federal Rules of Civil Procedure 60(b)(2) and (3). Because the district court abused its discretion in denying Rembrandt’s Rule 60(b)(3) motion, we reverse and remand for a new trial.
BACKGROUND
This case returns to us following an unusual set of circumstances. Rembrandt sued Johnson & Johnson Vision Care, Inc. (“JJVC”), alleging that its Acuvue Advance® and Oasys® contact lenses infringed the asserted claim of U.S. Patent No. 5,712,327. At trial, the parties disputed whether JJVC’s accused lenses met the “surface layer” and “soft” limitations of the asserted claim. Following trial, the jury returned a verdict of noninfringement. The district court, in the alternative, granted judgment as a matter of law that Rembrandt failed to prove that the accused lenses were “soft.” Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc. (JMOL Order), 282 F.R.D. 655, 668 (M.D.Fla.2012). We affirmed the district court’s grant of JMOL. Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc. (Rembrandt I), 725 F.3d 1377 (Fed.Cir.2013).
At trial, Rembrandt relied on expert testimony from Dr. Thomas Beebe to prove that the accused lenses met both the “surface layer” and ' “soft” claim limitations. During his direct examination regarding the “soft” limitation, Dr. Beebe presented test results to show that the accused lenses met this limitation. During cross-examination, however, Dr. Beebe drastically changed his testimony regarding the testing methodology he used. Because his testimony on cross-examination significantly conflicted with both his testimony during his direct examination and the testing methodology disclosed in his expert report, the district comb ultimately struck Dr. Beebe’s trial testimony regarding this testing. After noting that Dr. Beebe’s stricken testimony was the only evidence that Rembrandt advanced to prove the áceused lenses were “soft” in opposing JJVC’s motion, the district court granted JMOL that JJVC did not infringe. JMOL Order, 282 F.R.D. at 668.
In turn, JJVC relied on expert testimony from Dr. Christopher Bielawski to support its position that its accused lenses did not meet the “surface layer” limitation, but did not present expert testimony with respect to the “soft” limitation. During the course of his trial testimony, Dr. Bielawski took advantage of several opportunities to impugn Dr. Beebe’s credibility. For example, Dr. Bielawski described Dr. *1323 Beebe’s failure to correct allegedly incorrect data as “misleading and tantamount to dishonesty.” Joint Appendix (“J.A.”) 4683. JJVC also capitalized on Dr. Beebe’s changing testimony. During his closing argument, JJVC’s counsel urged that “[y]ou should not trust Dr. Beebe, and you should throw out his testimony, not in part, but in whole. You should not trust Dr. Beebe.” J.A. 5159. ’■
After trial, Rembrandt received information suggesting that Dr. Bielawski testified falsely at trial. Although the district court denied Rembrandt’s request for post-trial discovery, Rembrandt received much of the discovery it sought from Dr. Bielaw-ski’s employer, the University of Texas, through an open records request and state court litigation. In light of that discovery, the parties do not dispute that Dr. Bielaw-ski testified falsely during trial.[1]
Specifically, Dr. Bielawski repeatedly testified that he personally conducted X-ray photoelectron spectroscopy. (“XPS”) and time-of-flight secondary ion .mass spectrometry (“TOF-SIMS”) laboratory testing on JJVC’s accused lenses when, in fact,, the testing was conducted by Dr. Bielawski’s graduate students and various lab supervisors. The post-trial discovery suggests that Dr. Bielawski was not even in the country when some of the testing was done. Moreover, the post-trial discovery suggests that Dr. Bielawski overstated his qualifications and experience with these testing methodologies. Whereas Dr. Bielawski was presented to the jury as an expert in TOF-SIMS testing, he actually “had no TOF-SIMS experience whatsoever.” J.A. 5437. As such, for the purpose of considering the Rule 60(b) motions, the district court “assume[d] ... that Dr. Bie-lawski testified falsely when he said that he personally performed ... tests, and about his qualifications as an expert in performing those tests.” Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc. (Rule 60 Order); 300 F.R.D. 694, 698 (M.D.Fla.2014).
In addition to showing Dr. Bielawski’s false testimony, the post-trial discovery revealed that Dr. Bielawski withheld test results and data analysis that would have undermined his opinions and trial testimony. In particular, Dr. Bielawski withheld data from tests conducted on third-party contact lenses previously found to infringe the asserted claim. ■ JJVC provided the samples of these lenses to Dr. Bielawski and requested that he perform “any initial setup experiments” on the third-party lenses in ■ order to “satisfy! ] himself with respect to the proper investigational techniques to be used on contact lenses.” J.A. 5576. The test results generated in response to JJVC’s request were not produced before trial, and JJVC claims that it was unaware that any data had been generated. Had these test results been produced to Rembrandt, they would have shown that the infringing lenses do not have a surface coating of about 20 nanometers, undermining Dr. Bielawski’s testimony at trial. ’ Specifically, Dr. Bielawski testified at trial without contradiction about the differences between JJVC’s accused lenses and the infringing third-party lenses, explaining that the infringing lenses “have a surface coating that [is] about 20 nanometers,” J.A. 4697, whereas JJVC’s accused lenses do not. JJVC’s counsel emphasized Dr. Bielawski’s testimony on this point as proof of noninfringement during closing argument:
*1324 And guess what, this' point 20 is not picked out of thin air. It’s exactly what happens when you look at the [infringing third-party] lens.
J.A.5142.
In light of this post-trial discovery, Rembrandt moved for a new trial under Rules 60(b)(2) and (8), which state:
...On motion and just terms, the court may relieve a party ... from a final judgment ... for the following reasons: ... (2) newly discovered evidence, that with reasonable diligence, could not have been discovered in time to move, to a new trial under Rule 59(b); [or] (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.,
Following a lengthy hearing on the issue, the district court denied Rembrandt’s, motion. With little discussion, the district court dismissed Rembrandt’s argument that the withheld documents prevented it from fully and fairly presenting its case. The district court thus limited its analysis to Dr. Bielawski’s. false testimony. The district court concluded that Rembrandt was not entitled to a new trial under Rule 60(b)(2) because Rembrandt had not satisfied the requirement in the Eleventh Circuit that a new trial would probably produce a new result. And it concluded that Rembrandt was not entitled to a new trial under Rule 60(b)(3) because JJVC’s counsel was not complicit in the false testimony and because Rembrandt was not prevented from fully and fairly presenting its case. Rembrandt then renewed its motion to reopen discovery into JJVC’s awareness of Dr. Bielawski’s misconduct, but the district court denied that motion too.
Rembrandt appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
'Discussion
We review procedural questions such as, the district court’s denial of a Rule 60(b) motion under the law of the regional circuit, here the Eleventh Circuit. Amado v. Microsoft Corp., 517 F.3d 1353, 1357 (Fed.Cir.2008)., The Eleventh Circuit reviews district court decisions on Rule 60(b) motions for an abuse of discretion. Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir.1984). Under Eleventh Circuit law, the district court abuses its discretion if it: (1) applies an incorrect legal standard; (2) follows improper procedures in making the. determination; or (3) makes findings of fact that are clearly erroneous. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir.2008).
We first consider Rembrandt’s motion for a new trial under Rule 60(b)(3), which permits a district court to. grant a new trial in cases involving “fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.” Fed.R.Civ.P. 60(b)(3). To prevail on a motion under Rule 60(b)(3) in the Eleventh Circuit, the movant must establish that: (1) the adverse party engaged in fraud or other misconduct; and (2) this conduct prevented the moving party from fully and fairly presenting its case. Havre v. A.H. Robins Co., 750 F.2d 1501, 1503 (11th Cir.1985), vacated in part on other grounds, 866 F.2d 1303 (11th Cir.1989). Proof that the result of the case would have been different but for the fraud or misconduct is not required; instead, Rule 60(b)(3) “is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.” Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir.1978)[2] (internal citations omitted); see also Wilson v. Thompson, 638 F.2d *1325 801, 804 (5th Cir.1981) (“We recognize that a party moving under Rule 60(b)(3) may prevail without showing, that the alleged fraud affected the outcome of the prior trial.”).
I.
We start with the easier question of whether Rembrandt had a full and fair opportunity to present its case given Dr. Bielawski’s false testimony and withholding of relevant documents. In denying Rembrandt’s motion under Rule 60(b)(3), the district court concluded that, “even accounting for Dr. Bielawski’s misconduct, Rembrandt was not prevented from making its case,” and explained that this holds true “even without considering that JJVC was entitled to judgment as a matter of law because Rembrandt failed to present evidence on an essential element of its case.” Rule 60 Order, 300 F.R.D. at 701 & n. 9. The district court also summarily dismissed Rembrandt’s argument that it was prevented from fully and fairly presenting its case due to the withheld documents as “murky at best.” Id. at 697 n. 1. We conclude that the district court clearly erred in finding that Rembrandt had a full and fair opportunity to present its infringement case. -
Dr. Bielawski testified on a central infringement issue at trial — -whether JJVC’s accused lenses met the “surface layer” claim limitation. In doing so, he testified falsely about his personal involvement in the testing, as well as his experience with the relevant testing methodologies. He also withheld contradictory test results on third-party lenses known to infringe and generated at the request of JJVC’s counsel. Because these test results were not produced, Dr. Bielawski testified without contradiction about alleged differences between the accused lenses and the third-party lenses to show that the accused lenses did not have the claimed surface layer. JJVC’s counsel emphasized these differences as proof of noninfringement in his closing argument. ■ In addition, Dr. Bie-lawski and JJVC’s counsel seized several opportunities to impugn the credibility of Dr. Beebe,’ but the jury never heard that Dr. Bielawski had presented false testimony. Under these circumstances, we cannot agree with the district court that this conduct did not prevent Rembrandt from fully and fairly presenting its' infringement case. The verdict was irretrievably tainted by Dr. Bielawski’s false testimony and Dr. Bielawski’s arid JJVC’s withholding of relevant documents. While we do not know the exact impact the false testimony would have had on the jury, the false testimony may well have been critical to the nonin-fringement verdict and the jury may well have been impacted upon learning that Dr. Bielawski committed an act at least as egregious as Dr. Beebe’s.
JJVC and the dissent nonetheless assert that the district court- did not abuse its discretion, relying on a rationale different from that of the district court. Specifically, JJVC argues that Rembrandt had a full and fair trial because Dr. Bielawski did not testify regarding the “soft” limitation and Rembrandt cannot show that the false testimony and improperly - withheld documents resulted in substantial impairment of its' ability to present its ease on the “soft” limitation. We are not convinced by JJVC’s argument.
The district court granted JMOL, not because of the merits of JJVC’s nonin-fringement position, but because its exclusion of Dr. Beebe’s- unreliable testimony compelled that result. The district court judge acknowledged that he may well have responded differently had he been aware at the time of Dr. Bielawski’s false testimony. During the hearing regarding the Rule 60 motions, he explained:
I guess my problem with it is — is that— or my query'is that — I don’t think !— *1326 I’m not sure I would have gotten to that place [of granting judgment as a matter of law] — or I sure — I may have gotten to that place differently — or I may — something different may have happened if I had known at the time — Dr. Beebe’s shortcomings came out during the trial. And they were obvious and — and I made my ruling based on what I saw, noting, also, that as I recall it you were able to, with the jury, take great advantage of his implosion.
And so you kind of got — you kind of got a double whammy. You got me ruling as a matter of law to strike his testimony. But you also got to argue to the jury that — that one of their experts had — was unworthy of any credence. And so you got to do all that because Dr. Beebe’s malfeasance came out during the trial.
August 2, 2013 Motion Hearing, J.A. 7440-41. In the order denying Rembrandt’s Rule 60(b)(3) motion, the district court also acknowledged that Dr. Bielawski’s misconduct was at least as egregious as Dr. Beebe’s:
This was a serious and detrimental occurrence. It insulted, the jury, violated the integrity of the judicial process, and interfered with the search for the truth that is the hallmark of our trial-by-jury system. Moreover, this false testimony was given in a highly contested patent case in which an expert for Rembrandt, Dr. Beebe, radically changed his expert testimony during the middle of his examination. As a result, the Court struck his testimony and entered an alternative Rule 50 judgment against Rembrandt because it was unable to prove a required element of its case without Dr. Beebe’s testimony.,.. Now, having learned post-trial that JJVC’s expert likely lied on the stand, arguably committing an act at least as egregious as Dr. Beebe’s, it is a fair question to ask whether Rembrandt should be entitled to a new trial.
Rule 60 Order, 300 F.R.D. at 698.
On this record, we cannot agree that Rembrandt had a full and fair trial on the “soft” limitation. We rejected an argument similar to JJVC’s in Fraige v. American-National Watermattress Corp., 996 F.2d 295 (Fed.Cir.1993). In Fraige, the defendant forged a prior art document. Fraige, 996 F.2d at 296. Although the forged document was not presented to the jury, several witnesses who testified at trial had reviewed the document. Id. at 296, 298. We explained that we could not accurately determine the impact of the forged document on the jury, noting that “[w]hen it became known that the jury was presented testimony based on fraudulent documentation, where that testimony was relevant and material to the issue of patent validity, all of the jury’s invalidity findings became suspect.” Id. at 299 (emphasis added). Although an arguably “independent” ground of invalidity existed in Fraige — invalidity under 35 U.S.C. § 112 — we nevertheless reversed the district court’s denial of a new trial under Rule 60(b)(3).[3] We concluded that where the impact of the tainted evidence on the allegedly “independent” ground of invalidity could not be ascertained, the independent ground was not a basis for denying *1327 the request for a new trial... Id. at 299-300.
Similarly, here, we will not,speculate as to what impact the fraud and misconduct had on the ultimate judgment of nonin-fringement where the false testimony .and withheld documents were material to the issue of patent infringement and could well have impacted the jury’s verdict, as well as the district court’s decision to exclude Dr. Beebe’s testimony and consequently grant JMOL on the “soft” limitation. We agree with Rembrandt that it was prejudiced by the withholding of third-party test results and by the false testimony. As the Fifth Circuit held in Rozier, Rembrandt is not required to prove that the withheld documents were of such nature as to alter the result in the case. 573 F.2d at 1339. Instead, Rembrandt need only show that timely production of the documents would have made a difference in the way Rembrandt’s counsel approached the case or prepared for trial. Id. at 1342. Here, Rembrandt could have deposed the individuals who actually conducted the testing for JJVC. JJVC based its noninfringement argument at trial nearly exclusively on the surface layer limitation. Knowing the weaknesses in JJVC’s evidence regarding the surface layer limitation could well have changed the nature of the entire proceedings. We cannot and will not speculate about the profound effects knowledge of the withheld documents and falsified testimony of JJVC’s primary witness would have had on the proceedings and the district court’s JMOL. Suffice it to say that this raises a substantial question undermining the judgment of noninfringement.
Finally, we note that Rembrandt presented additional evidence at trial to show that JJVC’s accused lenses satisfied the “soft” limitation. For example, JJVC stipulated that the accused lenses are silicone hydrogel contact lenses, and the record contains : evidence that suggests silicone hydrogel contact lenses yield a Shore D test result of zero. The dissent states that Rembrandt failed to raise this evidence in response to JJVC’s JMOL motion. It is true, as we noted in our prior opinion, Rembrandt identified only Dr. .Beebe’s testimony when responding to JJVC’s JMOL motion. Rembrandt I, 725 F.3d at 1383. Had Dr. Beebe’s testimony not been stricken, it certainly, would have prevented the court from entering JMOL in favor of JJVC. In-addition, although not relied on by Rembrandt in responding to JJVC’s JMOL motion, there was additional evidence in the trial record that the accused lenses met the “soft” limitation. In-light of this record, we cannot conclude that Rembrandt had a full and fair trial on infringement.
II.
We next look to whether Rembrandt established that “the adverse party engaged in fraud or other misconduct.” Havre, 750 F.3d at 1503 (citation omitted). We conclude that the district court abused its discretion in concluding otherwise. Specifically, the district court erred by summarily dismissing Rembrandt’s allegations of misconduct and by requiring proof that JJVC or its counsel was complicit in Dr. Bielawski’s false testimony.
Rembrandt alleges fraud based op Dr. Bielawski’s false testimony and misconduct based on Dr. Bielawski and JJVC’s failure to produce the contradictory test results on third-party lenses. Each allegation forms an independent basis for a new trial under Rule 60(b)(3). JJVC. does not dispute that Dr, Bielawski testified falsely and that it never produced the test results for the third-party lenses. Instead, JJVC argues that Rule 60(b)(3) cannot provide relief because JJVC was not complicit in the fraud or the misconduct. Considering only Dr. Bielawski’s false testimony, the *1328 district court held that Rembrandt was not entitled to a new trial under Rule 60(b)(3) because it'had not shown that either JJVC or its counsel was eomplicit in any fraud or misconduct.
Turning first to Rembrandt’s allegations of misconduct, we agree with Rembrandt that the district court erred by failing to fully address Rembrandt’s allegations of misconduct and requiring proof of complicity. As used in Rule 60(b)(3), “ ‘[m]isconduct’ does not demand proof of nefarious intent or purpose as a prerequisite to redress.... The term can cover even accidental omissions — elsewise it would be pleonastic, because ‘fraud’ and ^misrepresentation’ would likely subsume it.” Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir.1988) (emphasis added); see also Bros Inc. v. W.E. Grace Mfg. Co., 351 F.2d 208, 211 (5th Cir.1965) (“The effect [of misconduct] was the same whether there was evil, innocent or careless, purpose.”).
■ JJVC admits that it provided samples of third-party .lenses to Dr. Bielawski to conduct “initial set up experiments” on the lenses. The relevance of these tests to JJVC’s nomnfringement defense cannot be disputed — Dr. Bielawski testified about differences between JJVC’s accused lenses and the third-party lenses that were known to infringe and JJVC’s counsel emphasized these differences during his closing argument.
JJVC argues that a new trial is not warranted because it “Whs unaware of any testing of these lenses.” Appellee Br. 28. JJVC’s argument strains credulity, given that it provided the lenses to Dr. Bielawski and talked "about them during closing argument. But We need not determine whether JJVC’s failure to obtain and produce this data was intentional or merely accidental; as explained above, even an accidental omission qualifies as misconduct under Rule 60(b)(3).'
Turning "next to Rembrandt’s allegations of fraud, the district court concluded that Rule 60(b)(3). requires proof of JJVC’s complicity in the-false testimony, relying heavily on Harre, 750 F.2d 1501, as well as cases outside of the Eleventh Circuit. Rembrandt argues that the district court misinterpreted Eleventh Circuit precedent by requiring proof of complicity to satisfy Rule 60(b)(3). We agree.
Although evidence of complicity was considered by the Eleventh Circuit in Havre, the court did not announce a rule requiring such evidence to prevail on a Rule 60(b)(3) motion. The district court in this case acknowledged as much, stating that “the Harve court did not expressly limit its holding to circumstances in which counsel is eomplicit with witness misconduct. ...” Rule 60 Order, 300 F.R.D. at 699. Instead, after concluding that the appellant had “presented sufficient evidence to support the allegation that [the expert] committed perjury,” the Havre court turned to the second inquiry under Rule 60(b)(3) — “whether the conduct complained of prevented Appellants from fully and fairly presenting their case.” Harre, 750 F.2d at 1504-05. Although tfye Havre court also determined that counsel “must have been aware” of. the perjury and expressed deep concern in view of that determination, , it did not suggest that relief under Rule 60(b)(3) would otherwise have been unavailable. See id at 1505. Consistent with our understanding, a subsequent Eleventh Circuit case cited Havre for the proposition that mere “perjury constitutes fraud under [Rule] 60(b)(3).” See Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 n. 7 (11th Cir.1988). The Fifth Circuit has also recognized that Rule 60(b)(3) is remedial and should be liberally construed. Rozier, 573 F.2ct at 1346.
Likewise, we have previously affirmed á grant of a new trial under Rule 60(b)(3) in *1329 view • of an expert’s perjured testimony, even when it was undisputed that the party was unaware of the perjury. See Viskase Corp. v. Am. Nat’l Can Co., 261 F.3d 1316, 1324 (Fed.Cir.2001). In Viskase, an expert witness lied about his personal -involvement in laboratory testing concerning alléged infringement. Id. Although there was no evidence that the sponsoring party or its counsel was aware of the expert’s perjury, the district court had, determined that the party’s counsel “surely knew there must have been additional documents and that there were additional tests conducted” that had not been produced, .end, as a result, “conclude[d] that [the party] cannot escape responsibility for [the expert’s] testimony.” Viskase Corp. v. Am. Nat’l Can Co., 979 F.Supp. 697, 705 (N.D.Ill.1997). In affirming the district court’s grant.of a new trial, we “agree[d] with the district court that the jury verdict was irretrievably tainted ahd was properly set aside.” Viskase, 261 F.3d at 1324. We are presented' with very similar facts here. Although JJVC may have been unaware of Dr. Bielawski’s false testimony, JJVC should have known that additional tests were conducted and additional documents were generated. Indeed, it provided samples of the third-party lenses to Dr. Bie-lawski, requested that he conduct initial testing oh those lenses, and questioned Dr. Bielawski on the same subject matter during trial.
At bottom, the district court" erred by concluding that the Eleventh Circuit would require proof that JJVC or its counsel was complicit in Dr. Bielawski’s false testimony. In this most unusual case involving false testimony by both parties’ experts and misconduct, we cannot agree that the Eleventh Circuit-would require complicity in Dr. Bielawski’s false testimony. While the district court gave thoughtful consideration to Rembrandt’s Rule 60(b)(3) motion and to the integrity of the judicial process, it erred in requiring complicity and summarily dismissing Rembrandt’s separate allegation, of misconduct. We thus conclude that the district court abused its discretion in denying Rembrandt’s motion for a new .trial under Rule 60(b)(3).
III.
Because we reverse the district court’s denial of Rembrandt’s motion for a new trial under-Rule 60(b)(3), we do not consider whether the district court abused its discretion in denying Rémbrandt’s Rule 60(b)(2) and discovery motions.'- We also reject JJVC’s argument that the mandate rule precludes consideration of Rembrandt’s Rule 60(b) motions: Our prior decision in this case did not address, explicitly or implicitly,' Rembrandt’s request for a new trial under Rule 60(b). See Rembrandt I, 725 F.3d 1377.
Conclusion
We hold that the district court abused its discretion in denying Rembrandt’s motion for a new trial under Rule 60(b)(3). We therefore reverse and remand for a new trial.
REVERSED AND REMANDED

. Because perjury is a crime and Dr. Bielaw-ski is not a party to this litigation, we express no opinion as to whether Dr. Bielawski committed perjury. Instead, we accept, for the purpose of deciding this case, the parties’ and district court’s conclusion that Dr. Bielawski testified falsely' at trial.

. Fifth Circuit precedent prior to September 30, 1981 is binding on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981).

. The dissent asserts that Fraige is inapposite, contending that “our reasoning was that relief was available not under Rule 60(b)(3) but under the savings clause in Rule 60.” We disagree. The Court’s decision in Fraige rested on Rule 60(b)(3). Indeed, the Court specifically stated that “[t]he effect of the tainted evidence on the section 112 defense, while less certain, cannot be ascertained and therefore is similarly not a basis for denying the Rule 60(b)(3) motion for relief from the patent invalidity judgment.” 996 F.2d at 299-300 (footnote omitted).