DYK, Circuit Judge,
dissenting.
This case presents two important questions about the interpretation of Rule 60(b)(3) of the Federal Rules of Civil Procedure in the context of false testimony by an expert witness. The first is whether a showing by a movant that it lacked a “full and . fair” opportunity to present its case requires some showing that the result could have been affected by the false testimony. The second is whether false testimony by an-.expert witness can be attributed “to the opposing, party” (as required by the rule) without a showing of knowledge or reason to know that the testimony was- false. ;I respectfully suggest that the majority is wrong on both counts.
*1330 I
Relying oh Rule 60(b)(3), Rembrandt sought to set aside a summary judgment of non-infringement of the -asserted claim of U.S. Patent No. 5,712,327 (“the '327 patent”) based on false testimony of Johnson & Johnson Vision Care’s (JJVC’s) expert witness, Dr., Christopher Bielawski. The district court denied relief.
To succeed on a motion under Rule 60(b)(3), it is not necessary to establish that the fraud “alter[ed] the result in,the case.” Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir.1978). But, the movant must demonstrate by clear and convincing evidence that the alleged fraud or misconduct prevented it “from fully and fairly presenting his case or defense.” Cox Nuclear Pharm., Inc. v. CTI, Inc., 478 F.3d 1303, 1305 (11th Cir.2007); Havre v. AH. Robins Co., 750 F.2d 1501, 1503 (11th Cir.1985); see also 11 Charles Alan Wright et al., Federal Practice and Procedure § 2860 & n. 12 (3d ed.2012) (noting that to qualify for relief under the rule, “the fraud must have prevented the moving party from fully and fairly presenting his case,” and citing cases). In other words, the moving party must demonstrate that the misconduct “substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial.” Anderson v. Cryovac, Inc., 862 F.2d 910, 926 (1st Cir.1988). In my view, the majority’s decision effectively eliminates this requirement, and errs in reversing the district court’s determination that this standard was not met.
• At the original trial, JJVC argued for a finding of noninfringement based on two limitations of asserted claim 1 of the '327 patent. The claim requires contact lenses that are both (1) “soft” and (2) have a “tear-wettable surface layer;” '327 patent, col. 8 11. 2-16. These are separate and independent limitations. For example, both “hard” and “soft” contact lenses can be coated with a material to make. the lenses more “tear-wettable.” Similarly, the patent itself describes prior art “soft” lenses that lack a surface layer. Thus, to prevail in its infringement case, Rembrandt had the burden of independently proving (1) that the accused contact lenses were “soft” and (2) that the accused lenses had a surface layer. • In this case, two witnesses testified falsely, one for each side and one on each issue.
The district court construed “soft” to mean “having a Hardness (Shore D) of less than 5” on the Shore scale — an accepted standard for hardness. Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc., 282 F.R.D. 655, 657 (M.D.Fla.2012) (“JMOL Order”). In other words, to meet the claim limitation, the accused lenses had to have a value of less than five according to a commonly used testing and measurement method for hardness.
Rembrandt’s expert witness, Dr. Thomas Beebe, Jr., testified that the accused contact lenses met the “soft” limitation of the patent claim. During his testimony about the “soft” limitation, “Dr. Beebe’s trial testimony did not match the opinions disclosed in his expert report.” Rembrandt Vision Techs. v. Johnson & Johnson Vision Care, Inc., 725 F.3d 1377, 1379 (Fed.Cir.2013) (“Rembrandt I”). “In fact, the differences ... [were] so substantial that Dr. Beebe essentially performed an entirely different test” than he had described in his expert report. JMOL Order, 282 F.R.D. at 663. During what the district court described as an “implosion” on the stand, Dr. Beebe “completely changed his testimony” during cross-examination. Id. at 668. Accordingly, after trial, the district court excluded Dr, Beebe’s testimony and, because “Dr, Beebe’s testimony was the only evidence presented at trial that showed that the accused lenses met the ‘soft’ limitation,” the district court granted JJVC’s- motion for judgment as a matter of law (“JMOL”) *1331 that the accused lenses did not infringe because they did not meet the “soft” limitation. Rembrandt. I, 725 F.3d at 1383. On appeal, we affirmed the district court’s exclusion of Dr. Beebe’s testimony and the subsequent grant of JMOL. Id. at 1378.
A different scenario played out with respect to the “surface layer” limitation. The district court construed the “surface layer” limitation to mean “a layer beginning from and including the outermost surface and moving inward to an arbitrary depth of the lens' and having a different composition from the ‘body[1] portion of the lens.” Rembrandt Vision Techs. L.P. v. Johnson & Johnson Vision Care, Inc., No. 11-cv-0819, EOF No, 300 (Transcript of May 10, 2012), at 295. In other words, to infringe, contact lenses must contain an outer layer made up of a different material than the rest of the contact lens. JJVC’s expert witness, Dr. Bielawski,. testified that the accused products did not meet the surface layer limitation.
After trial, Rembrandt discovered that Dr. Bielawski had falsely testified about his credentials and about who had performed the testing in his expert report. Rembrandt also discovered that data from Dr. Bielawski regarding surface-layer testing of third party lenses had been withheld. As the majority notes, Dr. Bielawski testified for JJVC “to support its position that its accused lenses did not meet the ‘surface layer’ limitation, but did not present expert testimony with respect fi> the ‘soft’ limitation.” Maj. Op. at 1322.
The question here is whether Dr. Bie-lawski’s later-discovered false testimony about the “surface layer” limitation should result in re-opening the district court’s JMOL of non-infringement based on the plaintiffs failure to produce any evidence in response to the JMOL motion (absent Dr. Beebe’s stricken testimony) that the accused lenses met the “soft” limitation. The district court correctly concluded that the JMOL should not be reopened because Rembrandt was not deprived of a full and fair opportunity to present its case on the “soft” limitation — an issue which was dis-positive of non-infringement.
I note at the Outset that the majority incorrectly focuses on the jury verdict of non-infringement. See, e.g., Maj. Op. at 1325 (“The verdict was irretrievably tainted by Dr: Bielawski’s false testimony and Dr. Bielawski’s and JJVC’s withholding of relevant documents. While we do not know the exaet impact the false testimony would have had on the jury, the false testimony may well have been critical to the noninfringement verdict and the jury may well have been impacted upon learning that Dr. Bielawski committed an act at least as egregious as Dr. • Beebe’s.”) Whether the jury verdict was tainted by Dr.. Bielawski’s testimony about Dr. Beebe is not relevant. The jury verdict is not under review here; the district court’s grant of JMOL (on the “soft” limitation only) is, and the district court did not rely on Dr. Bielawski’s testimony in granting JMOL.
In this respect, to succeed on the Rule 60(b)(3) motion for a new trial, Rembrandt was required to show that the false testimony resulted in a substantial impairment of its ability to present , its case on the “soft” issue. “Substantial impairment may exist, for example, if a party shows that the [misconduct] precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination.” Anderson, 862 F.2d at 925. But if the misconduct is related to evidence that is “cumulative, insignificant, or of marginal relevance,” “retrial would needlessly squander judicial resources.” Id. at 924.
Rembrandt’s only argument as to substantial impairment is that it “could have *1332 moved for summary judgment on the surface layer issue — or ■ streamlined its trial evidence oh the issue — and thus had more time to present additional evidence regarding' the ‘soft’ nature of the accused lenses.” Reply Br. ■ at 24. In other words, Rembrandt speculates that it would have spent more time preparing its case-for the “soft” limitation and could have potentially prevented Dr. Beebe’s meltdown on the stand. And the majority asserts that the existence of such a possible reallocation of resources is sufficient, stating that “[kjnowing the weaknesses in JJVC’s evidence regarding the surface layer limitation could well have changed the nature of the entire proceedings. ■ We cannot and will not speculate about the profound effects knowledge of the [alleged misconduct] would have had on the proceedings and the district court’s JMOL.” Maj. Op. at 1327. Under this standard, it is hard to see any case where, after a party proves misconduct of any kind, that party would not be afforded relief. In effect, the majority’s holding renders the “full and fair” requirement a nullity. Neither Rembrandt nor the majority can point to -any case where Rule 60(b)(3) relief has been granted based on such speculation.
The authority is uniformly to the contrary. The standard before Rule 60 was adopted was quite clear. “[T]o justify setting aside a decree for fraud whether extrinsic or intrinsic, it must appear that the fraud charged really prevented the party complaining from making a full and fair defense.” Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 421, 43 S.Ct. 458, 67 L.Ed. 719 (1923) (emphasis added). “If it does not so appear, then proof of the ultimate fact, to wit, that the decree was obtained by fraud fails.” Id. ■ This requires a showing of how “the complaining party was, without his fault, deprived of his opportunity to present his defense on the merits____ Chancery will intervene, therefore, only when the complainant was prevented from presenting a meritorious defense by the inequitable conduct of his adversary unmixed with negligence or fault on his own part.” In re Innis, 140 F.2d 479, 481 (7th Cir.1944). “[I]t [is] an imperative condition of such relief that the party seeking it shall make it clearly appear that he had a good defense to the action, which, by fraud or accident, he was prevented from making, and also that there was neither fault nor negligence on his part.” Talbott v. Pickford, 36 App.D.C. 289, 298 (D.C.Cir.1911), aff'd sub nom., 225 U.S. 651, 32 S.Ct. 687, 56 L.Ed. 1240 (1912). This common law equity standard was incorporated into the Rule 60(b)(3) standard. Rozier, 573 F.2d at 1339 (citing Toledo Scale, 261 U.S. at 421, 43 S.Ct. 458).
Under Rule 60(b)(3), when the alleged misconduct is related to issues that “are essentially irrelevant to the legal issues upon which the case turned,” relief from the' judgment is not warranted. Simons v. Gorsuch, 715 F.2d 1248, 1253 (7th Cir.1983); see also PMC, Inc., v. - Atomergic Chemetals Corp., 122 F.3d 1057, at *1 (2d Cir.1995) (unpublished decision) (finding claim of lack of a full and fair opportunity “to be without merit” when an expert lied about his credentials because the misconduct “did not have ‘such a close nexus to the issues’ ” relevant in ■ the case); Anderson, 862 F.2d at 931 -(relief under Rule 60(b)(3) should not be granted where the misconduct “would have had no effect on the result” of the case).
A review of cases where Rule 60(b)(3) motions have been granted shows that relief is only granted when the misconduct involves material, relevant evidence; in other words, when knowing about the misconduct actually-could have made a difference. See, e.g., Abrahamsen v. Trans-State Express., Inc., 92 F.3d 425, 430 (6th Cir.1996) (plaintiff in a tort action result *1333 ing from a car accident entitled to a new trial because defendant’s attorney withheld evidence of a statement by defendant’s driver that he “dozed off” while driving, leading to the accident); Rozier, 573 F.2d at 1339, 1342-43 (defendant improperly withheld an internal cost/benefit report showing the defendant’s knowledge of the defect and rejecting a safer design; the report “would have” affected plaintiffs approach to the design-defect tort case, and the plaintiff was “prejudiced”); Seaboldt v. Pa. R.R.. Co., 290 F.2d 296, 299 (3d Cir.1961) (defendant entitled to a new trial in a personal injury case relating to a back injury because plaintiffs counsel failed to supply information concerning a chiropractor who would have testified that hq “had treated the plaintiffpreviously for a ‘chronic’ back ailment” before the alleged injury.). ; .
Fraige v. American-National Watermattress Corp., 996 F.2d 295 (Fed.Cir.1993), relied on by the majority, is not to the contrary. In that case, counsel for the accused infringer had submitted to the court “false and forged documentation” about a supposed prior art reference. Id. at 296. The motion was made under Rule 60(b)(3), and we held that relief should have been granted under that rule. However, . our reasoning was that relief was available not under Rule 60(b)(3) but under the savings clausé in Rule 60, which allows a court' to “entertain an independent action for fraud on the court.” Fed.R.Civ.P. 60(d)(1); see also Fraige, 996 F.2d at 297 (citing the savings clause). As the Advisory Committee Note to the rule explains, “the rule expressly does not limit the .power of the , court, when fraud has been perpetrated upon it, to; give relief under the saving clause”. As an illustration of this situation, see Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).[1] Fed.R.Civ.P. 60(b) Advisory Committee Note to the 1946 Amendments. We found in Fraige that “[l]ike Hazel-Atlas, [the defendant’s] fraudulent conduct was a wrong against the judicial system as well as against [the plaintiff.]” 996 F.2d at 299. Appropriately, we found that a new.trial was necessary because for more serious “fraud .on the court” (unlike Rule 60(b)(3)), the moving party need not demonstrate prejudice to receive relief from a judgment because “a decision produced by fraud on the court is not in essence a decision at all, and never, becomes final.” Kenner v. Comm’r of Internal Revenue, 387 F.2d 689, 691 (7th Cir.1968). Fraige is not authority for the proposition that Rule 60(b)(3) does not require a showing of lack of full and fair opportunity.
Rembrandt has failed to show how knowledge of Dr. Bielawski’s .misconduct would have changed its approach to the “soft” limitation. The JMOL was based entirely on the exclusion of Dr. Beebe’s testimony because of his “abrupt and still unexplained implosion” that “led to the derailment of the trial” on the softness issue. J.A. 7444.[2]
*1334 The majority suggests that there was other evidence in the trial record that the accused lenses met the “soft” limitation, but such evidence was not raised by Rembrandt in response to the JMOL motion. Maj. Op. at 1327. In the first appeal, we held that Rembrandt had not preserved the right to argue this evidence in connection with the JMOL motion.[3] I fail to see how the decision by Rembrandt not to raise this evidence could have even arguably been affected by Dr. Bielawski’s false testimony.
In any event, Rembrandt’s decision not to raise this evidence represents a strategic litigation choice. Rule 60(b)(3)- cannot be used to allow a party to escape its own negligence in developing its case. Courts routinely deny Rule 60(b)(3) motions when a party loses not because of the alleged fraud but because of its own failings. “When a party is capable of fully and fairly preparing and presenting his case notwithstanding the adverse party’s arguable misconduct, the trial court is free to deny relief under Rule 60(b)(3).” Karak v. Bursaw Oil Corp., 288 F.3d 15, 22 (1st Cir.2002); see also Diaz v. Methodist Hosp., 46 F.3d 492, 497 (5th Cir.1995). Nothing about Dr. Bielawski’s misconduct regarding the “surface layer” limitation prevented Rembrandt from raising other evidence on the softness issue in response to the JMOL motion.
Quintessentially, the resolution of a Rule -60(b)(3) motion is a matter of discretion for the district court judge, who sat during the entire trial and is most intimately familiar with the reasoning for his own statements and previous order. Here the district court concluded that no retrial was appropriate. ■ In an effort to suggest that the district court would have reached a different result if it had applied a different standard, both Rembrandt and the majority point to ambiguous statements by the district court during the Rule 60 hearing when the trial judge, before reaching his final decision on the motion,- speculated that the false testimony might have somehow affected the JMOL decision as to the soft limitation. But, as noted, Dr. Bielaw-ski offered no testimony on the “soft” limitation, and the district court made no finding of any such relationship in its final decision.[4]
[1] At best, the district court’s statements suggest that a remand to the district court might be appropriate to reconcile the final order and the court’s earlier statements.
In short, the record here demonstrates that Rembrandt failed to produce any credible evidence on one element of its case. That failure had nothing to do with Dr. Bielawski’s false testimony. In the prior appeal, we affirmed that the district court acted properly in excluding Dr; Beebe’s testimony and in granting JMOL of non-infringement based on the lack of *1335 evidence. That previous determination should not be disturbed by a subsequent discovery of false testimony about an entirely different issue.
II
There is also, in my view, a second error in the majority opinion. Under Rule 60(b)(3), “the court may relieve a party or its legal representative from a final judgment, order, or proceeding” if there was “fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.” Fed.R.Civ.P. 60(b)(3). I also disagree with the majority’s conclusion (contrary to that of- the district court) that the rule does not require any evidence that the misconduct was attributable, to “the opposing party” as required by the text of Rule 60(b)(3).
The majority finds that the district court erred in “requiring proof of [JJVC’s] complicity” in Dr. Bielawski’s false testimony. Maj. Op. at 1327-28. According to the majority, “[i]n this most unusual case involving false testimony by both party experts, we cannot agree that the Eleventh Circuit would require complicity in Dr. Bielawski’s false testimony.” Id. at 1329,
The two other circuits that have confronted the issue have reached the opposite conclusion. As the Seventh Circuit explained, “[ejxpert witnesses ... are free agents. Parties and counsel have an obligation not to deceive the court about the witness and to correct statements they know to be false, but they are not responsible for the details of the witness’s testimony.” Metlyn Realty Corp. v. Esmark, Inc., 763 F.2d 826, 833 (7th Cir.1985). Thus, the Seventh Circuit held that, absent evidence that “the adverse party procured or knew of any false testimony,” relief under Rule 60(b)(3) is not available. Id. at 832; see also Richardson v. Nat'l R.R. Passenger Corp., 49 F.3d 760, 765 (D.C.Cir.1995) (declining to “substitute a less • restrictive limitation” under Rule 60(b)(3) for attribution to a party misconduct of another “for- the one expressly adopted under the Rules”). The majority’s conclusion also conflicts- with long-settled evidence and professional responsibility rules. See Fed.R.Evid. 607, Advisory Committee Notes to 1972 Proposed Rules (abandoning the “traditional rule against impeaching one’s own witness” because “[a] party does not hold out his witnesses as worthy of belief’); Model R. Prof. Resp. 3.3 and comments (a lawyer will only be responsible for false testimony if the lawyer knew or should have known the testimony was false).
While the Eleventh Circuit has not expressed itself clearly on the issue here, there is rio reason to think that it would reach the opposite conclusion. In the Eleventh Circuit casé granting Rule 60(b)(3) relief discussed by the majority, Havre, 750 F.2d at 1503, the court found “that the record supported] Appellants’ argument that a material expert witness testified falsely on the ultimate issue in the case, where the defense attorneys knew or should have known of the falsity of the testimony.” Id. at 1503 (emphasis added). Nothing in Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378 (11th Cir.1988), is to the contrary. Bonar, a case involving vacation of an arbitrator’s punitive damages award, cites Havre for the proposition that “[t]here is no doubt that perjury constitutes fraud,” and that the perjury is material when it goes to a “central issue” in a case. Id. at 1383 n. 7 & 1385. The Eleventh Circuit in Bonar did not discuss Havre in the context of party complicity under Rule 60(b)(3) because Bonar did not involve that issue (nor did it involve Rule 60(b)(3) at all).
The majority points to Viskase Corporation v. American National Can Company, 261 F.3d 1316 (Fed.Cir.2001), as support *1336 ing its position. See Maj. Op. at 1328-29. But Viskase arose in the Seventh Circuit, which explicitly-requires evidence of complicity to attribute false testimony of an expert witness to a party under Rule 60(b)(3). Metlyn, 763 F.2d at 833. The district court in Viskase specifically found that the plaintiffs counsel “surely knew there were additional documents [that had been withheld], and that there were additional tests conducted” relying on evidence such as “invoices directed to [plaintiffs] counsel and [the, expert’s] notes documenting] counsel’s knowledge.” Viskase Corp. v. Am. Nat. Can Co., 979 F.Supp. 697, 705 (N.D.Ill.1997). There is no similar evidence or finding here.
The majority agrees that JJVC “may have been unaware of Dr. Bielawski’s false testimony” but suggests that JJVC may have been complicit in withholding Dr. Bielawski’s data from tests on third-party contact lenses. Maj. Op. at 1328-29.' According to the majority, “JJVC should have known that additional tests were conducted and additional documents were generated. Indeed, it provided samples of the third-party lenses to Dr. Bielawski, requested that he conduct initial testing on those lenses, and questioned Dr. Bielawski on the same subject matter during trial.” Id.
While JJVC admitted that it did “suppl[yj [the third party lenses] to Dr. Bielawski,” it did so “only for use in setting up his equipment.” Appellee’s Br. at 28. According to JJVC, it “did not ask Dr. Bielawski to generate data on those lenses, and did not know that one of his assistants had (apparently) done so.” Id. In fact, JJVC asserts that “Dr. Bielawski repeatedly reássured JJVC’s counsel that he had given them all of the data he generated and all of the documents he relied upon.” Id. at 63. The district court did not resolve this factual dispute as to whether JJVC’s counsel should have known that additional evidence existed, finding instead that this “murky” assertion did not support a finding- that Rembrandt was prevented from fully and fairly presenting its case. Rembrandt, 300 F.R.D. at 697 n. 1.
The majority’s resolution of this factual dispute as to whether JJVC’s counsel should have known about the withheld documents is inconsistent with our role as a court of review and the deferential “abuse of discretion” standard of review. As we have found, when the lower tribunal has left a factual issue unresolved, “[w]e are unable to- engage in such fact-finding in the first instance and must therefore remand for further proceedings.” Nike, Inc. v. Adidas AG, 812 F.3d 1326, 1343-35 (Fed.Cir.2016). This' is a matter for the trial court and, at best,: a remand- for further fact-finding would be appropriate as to whether JJVC’s counsel should have known about the documents,
I respectfully dissent.

. Fraud on the court, not even alleged in this case, .constitutes “an unconscionable plan or scheme which is designed to improperly influence the court,” and, unlike fraud referenced in Rule 60(b)(3), involves the "integrity of the court itself." Charles Alan Wright, et al., Federal Practice and Procedure § 2870 (2012). In Hazel-Atlas, for example, the Supreme Court found that the patent-holder’s "flagrant” and "deliberate” plan to deceive both the Patent Office and the district court "call[ed] for nothing less than a complete denial of relief [] for the claimed infringement of the patent thereby procured and enforced.” Hazel-Atlas; 322 U.S. at 250, 64 S.Ct. 997.

. Although the district court, deferred action on, the JMOL until after the jury verdict, it could have granted the relief at the end of the presentation of Rembrandt’s case. If it had *1334 done so, Dr. Bielawski would never even have testified.

. Specifically, we found that ”[i]n opposing JJVC’s motion for judgment as a matter of law, Rembrandt only pointed to Dr. Beebe’s trial testimony. Moreover, Rembrandt conceded at the post-trial hearing that Dr. Beebe’s testimony was the only evidence presented at trial that showed that the accused lenses met the ‘soft’ limitation.... We decline to upend the district court’s decision on a basis that was not raised below.” Rembrandt I, 725 F.3d at 1383 (emphasis added).

. In the final order, the district court found that "[wjhat Rembrandt mainly lost here was an opportunity to discredit or eliminate an expert witness who ... was not required for JJVC to win the case. 'When the trial is looked at in its totality, even accounting for Dr, Bielawski’s misconduct, Rembrandt was not prevented from making its case.” Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc., 300 F.R.D. 694, 701 (M.D.Fla.2014) (“Rule 60 Order ”).