# United States Court of Appeals for the Federal Circuit

———————————

**REMBRANDT VISION TECHNOLOGIES, L.P.,**
*Plaintiff-Appellant,*

**v.**

**JOHNSON & JOHNSON VISION CARE, INC.,**
*Defendant-Appellee.*

———————————

2012-1510

———————————

Appeal from the United States District Court for the Middle District of Florida in No. 11-CV-0819, Judge Timothy J. Corrigan.

———————————

Decided: August 7, 2013

———————————

JACOB M. HOLDREITH, Robins, Kaplan, Miller & Ciresi L.L.P., of Minneapolis, Minnesota, argued for plaintiff-appellant. With him on the brief were RONALD J. SCHUTZ, DIANE L. SIMERSON, RYAN M. SCHULTZ, BRENDA L. JOLY, and SAMUEL L. WALLING.

GREGORY L. DISKANT, Patterson Belknap Webb & Tyler LLP, of New York, New York, argued for defendant-appellee. With him on the brief were EUGENE M. GELERNTER, MICHAEL J. BUCHANAN, and KATHLEEN CROTTY. Of counsel was CHARLES D. HOFFMANN. Of counsel on the brief were TIMOTHY JOSEPH BARRON, SR. and

ALEXANDER ROZENBLAT, Jenner & Block, LLP, of Chicago, Illinois.

———————————

Before DYK, CLEVENGER, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge,*

Rembrandt Vision Technologies, Inc. (Rembrandt) appeals from the district court's judgment that Johnson & Johnson Vision Care, Inc. (JJVC) does not infringe Rembrandt's U.S. Patent No. 5,712,327 ('327 patent). Rembrandt challenges the court's grant of judgment as a matter of law and its denial of Rembrandt's motion for a new trial. Because the district court correctly granted judgment as a matter of law that JJVC does not infringe, we *affirm.*

## BACKGROUND

The technology at issue in this case relates to contact lenses. Two important characteristics of a contact lens are its permeability to oxygen and the wettability of its surface. '327 patent, col. 1 ll. 18–21. By the 1980s, those skilled in the art had developed both "hard" and "soft" contact lenses that were permeable to oxygen but lacked a highly wettable surface. *Id.* col. 1 l. 25–col. 2 l. 7.

The contact lens claimed in the '327 patent has both a highly wettable surface and is permeable to oxygen. The patent discloses a soft gas permeable lens that contains an acrylic layer on the surface of the lens body. '327 patent, col. 3 l. 65–col. 4 l. 45. The addition of the layer increases the wettability and comfort of the contact lens. *Id.* col. 4 ll. 38–45. Claim 1 of the '327 patent is representative and is directed to a "soft gas permeable contact lens" with certain properties:

> A hydrophilic *soft gas permeable contact lens* comprised of a polymerization product . . . said lens comprising a hydrophilic lens body and a tear-wettable surface layer integral therewith, said

lens body being comprised of said polymerization product and said tear-wettable surface layer being comprised of polymeric material containing hydroxy acrylic monomer units . . . .

'327 patent, claim 1 (emphasis added). Rembrandt sued JJVC, alleging that its Advance® and Oasis® contact lenses infringed the '327 patent claims. JJVC prevailed at trial, and the district court, in the alternative, granted judgment as a matter of law that Rembrandt failed to prove that the accused lenses were "soft gas permeable" contact lenses. *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 668 (M.D. Fla. 2012) (*JMOL Order*).

The central issue in this appeal is whether Rembrandt proffered sufficient evidence that the accused contact lenses were "soft." The court adopted the parties' agreed construction of "soft gas permeable contact lens" as "a contact lens having a Hardness (Shore D) less than five." *JMOL Order*, 282 F.R.D. at 657. Due to that specific construction, the court excluded Rembrandt's evidence that the accused contact lenses were generally known as "soft" lenses because that evidence was not probative on whether the accused lenses had a Shore D Hardness of less than five. *Id.* at 664; J.A. 41–42.

At trial, Rembrandt relied on expert testimony from Dr. Thomas Beebe, Jr. to prove that the accused lenses had a Shore D Hardness of less than five. But Dr. Beebe's trial testimony did not match the opinions disclosed in his expert report, and the district court ultimately struck his testimony. Dr. Beebe testified in his expert report that he performed the Shore D Hardness test by stacking the accused lenses around a stainless steel ball and then probing them. *JMOL Order*, 282 F.R.D. at 657–58. He testified that he stacked 24 individual hydrated contact lenses to achieve a thick enough sample to allow full penetration by a probe that is 2.54 mm in length. *Id.*

JJVC moved to exclude that expert testimony on the basis that Dr. Beebe's Shore D Harding testing did not comply with industry-standard testing protocols. *Id.* at 658. JJVC contended that the applicable standards required probing a thick button of dry lens material on a flat surface and do not allow for testing a stack of hydrated contact lenses around a steel ball. J.A. 1941–42. JJVC also moved for summary judgment on the grounds that no reasonable juror could conclude that the accused lenses were "soft" based on Dr. Beebe's testing. *JMOL Order*, 282 F.R.D. at 658. The court denied JJVC's motion for summary judgment and deferred ruling on JJVC's evidentiary motion until after Dr. Beebe testified at trial. *Id.*

Dr. Beebe testified on direct examination that he had performed the steel ball Shore D Hardness test described in his expert report. *JMOL Order*, 282 F.R.D. at 658. During cross examination, JJVC's counsel asked Dr. Beebe whether he had tested a sufficiently thick sample of stacked lenses to comply with the industry-standard Shore D Hardness testing protocols, which required a stack with a thickness of 6 mm or more. *Id.* at 658–59. Dr. Beebe responded that he had tested a stack of lenses that was 6 mm thick, not 2.54 mm as he had disclosed in his expert report. *Id.* at 658–59. He testified that the error in his report "might be a typo." *Id.* at 659.

JJVC pressed Dr. Beebe on his testing methodology. Despite the "typo," Dr. Beebe confirmed that he had tested a stack of 24 contact lenses. *JMOL Order*, 282 F.R.D. at 658–59. JJVC then asked Dr. Beebe how a stack of 24 contact lenses, each with a thickness of .07 mm, could add up to 6 mm. *Id.* at 659. Dr. Beebe agreed that one would expect such a stack to have a thickness around 1.68 mm. *Id.*

JJVC then asked Dr. Beebe to confirm that he did not test flat samples of the lens material. *JMOL Order*, 282 F.R.D. at 659. At that point, Dr. Beebe "suddenly changed course in the middle of cross-examination and testified that he did not follow the procedures listed in his

expert report." *Id.* He testified that he performed the Shore D Hardness testing by cutting the lenses into quarters, stacking the lens quarters on a flat surface, and then probing them. *Id.* at 659–60. This procedure explained how he was able to create a stack of lenses that was 6 mm thick. *Id.* at 660. None of this procedure was in his expert report. *Id.* Dr. Beebe claimed that his expert report's disclosure of the wrong Shore D Hardness test procedure was a "typo." *Id.*

JJVC renewed its motion to exclude Dr. Beebe's testimony and moved for judgment as a matter of law, and the court granted the motions. *JMOL Order*, 282 F.R.D. at 657. The court struck Dr. Beebe's testimony under Federal Rules of Civil Procedure 26 and 37 because his expert report was "woefully deficient" to support his trial testimony. *Id.* at 663–65. The court also excluded Dr. Beebe's testimony under Federal Rule of Evidence 702 because nothing in the record established the reliability of the testing methodology that he testified to at trial. *Id.* at 665–67. Because Dr. Beebe's struck testimony was the only evidence that Rembrandt advanced at trial to prove that the accused lenses were "soft," the court granted judgment as a matter of law that JJVC did not infringe. *Id.* at 668.

Rembrandt appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).[1]

---

[1] Rembrandt also challenges the denial of its motion for a new trial based on the district court's construction of the "surface layer" limitation, its exclusion of evidence related to that limitation, and its denial of Rembrandt's attempt to reopen expert discovery regarding the surface layer issue. Because we affirm the district court's grant of judgment as a matter of law, we do not address those other issues.

DISCUSSION

I.

We apply regional circuit law to review the district court's exclusion of evidence and its grant of judgment as a matter of law. *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003). The Eleventh Circuit reviews *de novo* the grant of a motion for judgment as a matter of law. *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006). Judgment as a matter of law is appropriate when, after a party has been fully heard on an issue, "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party." FED. R. CIV. P. 50(a). A district court's evidentiary rulings are reviewed for an abuse of discretion. *Goodman-Cable-Gould Co. v. Tiara Condominium Ass'n, Inc.*, 595 F.3d 1203, 1210 (11th Cir. 2010).

II.

Rembrandt argues that the court erred in granting judgment as a matter of law. It contends that the district court improperly excluded Dr. Beebe's trial testimony. Rembrandt asserts that the mistakes in Dr. Beebe's report were unintended and did not harm JJVC. It further contends that Dr. Beebe's actual testing methodology was reliable because he followed industry standard testing protocols. Rembrandt argues that, because the court erroneously excluded Dr. Beebe's testimony, we should reverse the district court's grant of judgment as a matter of law.

Rembrandt also argues that its circumstantial evidence that the accused lenses are generally known as "soft" precludes entry of judgment as a matter of law. It contends that the district court erred by categorically excluding that circumstantial evidence. It further argues that the circumstantial evidence that was admitted in evidence shows that the accused lenses meet the "soft" limitation.

JJVC counters that the court properly granted judgment as a matter of law. It argues that, regardless of Dr. Beebe's intent, there was no justification for Dr. Beebe's late disclosure of his testing methods. JJVC argues that Dr. Beebe's change in testimony significantly impaired its ability to prepare a noninfringement defense and prepare the case for trial. It asserts that Rembrandt failed to show that Dr. Beebe's undocumented testing methodology was sufficiently reliable. Lastly, JJVC argues that the court did not err in declining to consider Rembrandt's circumstantial evidence because the "soft" limitation requires the lenses to meet a specific hardness measure. JJVC thus contends that, because Rembrandt did not present any admissible evidence that the accused lenses were "soft," the court properly granted judgment as a matter of law.

We agree with JJVC that the court correctly granted judgment as a matter of law. The district court did not abuse its discretion when it excluded Dr. Beebe's testimony under the Federal Rules of Civil Procedure. Rule 26 requires an expert witness to disclose an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). The purpose of the expert disclosure rule is to "provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quotations omitted).

Failure to comply with Rule 26(a) has significant consequences, including Rule 37's "self-executing sanction." FED. R. CIV. P. 37(c), advisory committee notes. An expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was "substantially justified or harmless." FED. R. CIV. P. 37(c)(1). The burden is on the party facing sanctions to prove that its failure to comply with Rule 26(a) was "substantially

justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Here, it is undisputed that Dr. Beebe failed to produce a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). The issue is thus whether, under Rule 37(c)(1), it was "substantially justified or harmless" that Dr. Beebe waited until trial to disclose the testing methodology that he claims he actually employed.

The district court did not err in concluding that the late disclosure was not substantially justified. The court rightly found that "[t]here is simply no excuse for Dr. Beebe waiting until cross-examination to disclose his testing procedures." *JMOL Order*, 282 F.R.D. at 664. Dr. Beebe submitted his expert report nearly six months prior to trial. *Id.* at 663–64; J.A. 96. Leading up to trial, the contents of his expert report were the subject of his deposition and were at issue in the pre-trial briefing, including dispositive motions. *JMOL Order*, 282 F.R.D. at 663–64. JJVC moved to exclude Dr. Beebe's testimony on the basis that his Shore D testing did not comply with industry standards. *Id.* at 658. JJVC also moved for summary judgment on the ground that the testing was not sufficient to raise a genuine issue of material fact as to the Shore D Hardness values of the accused lenses. *Id.* Nevertheless, even though the adequacy of his Shore D Hardness testing methodology was in dispute prior to trial, Dr. Beebe never attempted to supplement his expert report. As the district court observed, "Dr. Beebe thus apparently either did not review his expert report or forgot how he had actually performed the test." *Id.* at 664. Nothing in the record indicates that Dr. Beebe's failure to disclose his testing methodology was substantially justified.

We also reject Rembrandt's argument that Dr. Beebe's tardy disclosure was harmless. JJVC prepared its noninfringement defense based on the methodology disclosed in

Dr. Beebe's expert report, and opted to challenge that methodology rather than introduce competing expert testimony. *JMOL Order*, 282 F.R.D. at 664. Nothing during the course of the proceedings alerted JJVC to the possibility that Dr. Beebe would change his testimony. To the contrary, Rembrandt stood behind Dr. Beebe's expert report at summary judgment and Dr. Beebe testified to the veracity of his report on direct examination. *Id.* at 657–58. Dr. Beebe even initially defended his testing methodology upon cross-examination. *Id.* at 658–59. Dr. Beebe only recanted his expert report when, after being "repeatedly challenged on cross-examination," he was "[u]nable to explain how his written procedures complied with the standards" that govern hardness testing. *Id.* at 659, 668. While Dr. Beebe characterized the errors in his report as "typo[s]," it is undisputed that the shift in his testimony was both substantive and substantial. Such a late change in course significantly hampered JJVC's ability to adequately cross-examine Dr. Beebe and denied it the opportunity to develop or introduce competing evidence. The court did not err in finding that Dr. Beebe's failure to disclose his testing methodology harmed JJVC.

We conclude that the district court did not abuse its discretion in excluding Dr. Beebe's trial testimony under Rule 37. We therefore decline to address whether the court erred in excluding Dr. Beebe's testimony under Federal Rule of Evidence 702.

We also agree with JJVC that Rembrandt's circumstantial evidence does not preclude the grant of judgment as a matter of law. Prior to trial, the only circumstantial evidence that Rembrandt sought to admit was "JJVC's characterization of its lenses as 'soft.'" Rembrandt Visions Technologies, L.P.'s Resp. in Opp'n to Johnson & Johnson Vision Care, Inc.'s Mot. in Limine, at 7, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 3:11-cv-00819 (M.D. Fla. Feb. 7, 2012), ECF No. 201. The court was within its discretion to exclude that evidence. Rembrandt agreed to a construc-

tion of "soft gas permeable contact lens" that required the lens to have a Shore D Hardness less than five. Generic statements that the accused lenses are "soft" had the potential to confuse the jury and did not bear on whether the accused lenses had a Shore D Hardness of less than five. *See* FED. R. EVID. 403.

On appeal, Rembrandt argues that other circumstantial evidence shows that the accused lenses had a Shore D Hardness less than five. However, Rembrandt never argued that point to the district court. In opposing JJVC's motion for judgment as a matter of law, Rembrandt only pointed to Dr. Beebe's trial testimony. *See* Rembrandt Visions Technologies, L.P.'s Mem. Of Law in Opp'n to Johnson & Johnson Vision Care, Inc.'s Renewed *Daubert* Mot., *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 3:11-cv-00819 (M.D. Fla. May 3, 2012), ECF No. 266. Moreover, Rembrandt conceded at the post-trial hearing that Dr. Beebe's testimony was the only evidence presented at trial that showed that the accused lenses met the "soft" limitation. *JMOL Order*, 282 F.R.D. at 668 n.15; J.A. 8799–90. This other circumstantial evidence was also not raised in opposition to JJVC's motion in limine. We decline to upend the district court's decision on a basis that was not raised below. Because Rembrandt failed to offer any admissible evidence that the accused lenses met the "soft gas permeable contact lens" limitation, we affirm the district court's judgment that JJVC does not infringe the asserted claims of the '327 patent.

## CONCLUSION

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is

## AFFIRMED