# United States Court of Appeals for the Federal Circuit

---

**REMBRANDT VISION TECHNOLOGIES, L.P.,**
*Plaintiff-Appellant*

**v.**

**JOHNSON & JOHNSON VISION CARE, INC.,**
*Defendant-Appellee*

---

2015-1079

---

Appeal from the United States District Court for the Middle District of Florida in No. 3:11-cv-00819-TJC-JRK, Judge Timothy J. Corrigan.

---

Decided: April 7, 2016

---

ERIC JOHN MAGNUSON, Robins Kaplan LLP, Minneapolis, MN, argued for plaintiff-appellant. Also represented by RONALD JAMES SCHUTZ, JACOB M. HOLDREITH, BRENDA L. JOLY, JAMIE R. KURTZ, RYAN MICHAEL SCHULTZ.

GREGORY DISKANT, Patterson Belknap Webb & Tyler LLP, New York, NY, argued for defendant-appellee. Also represented by EUGENE M. GELERNTER; TIMOTHY JOSEPH BARRON, SR., Jenner & Block LLP, Chicago, IL; CHARLES DAVISON HOFFMANN, Hoffmann Marshall Strong LLP, New York, NY.

---

Before DYK, MOORE, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* STOLL.

Dissenting opinion filed by *Circuit Judge* DYK.

STOLL, *Circuit Judge.*

Rembrandt Vision Technologies, L.P. ("Rembrandt") appeals from the district court's denial of Rembrandt's motion for a new trial under Federal Rules of Civil Procedure 60(b)(2) and (3). Because the district court abused its discretion in denying Rembrandt's Rule 60(b)(3) motion, we reverse and remand for a new trial.

## BACKGROUND

This case returns to us following an unusual set of circumstances. Rembrandt sued Johnson & Johnson Vision Care, Inc. ("JJVC"), alleging that its Acuvue Advance® and Oasys® contact lenses infringed the asserted claim of U.S. Patent No. 5,712,327. At trial, the parties disputed whether JJVC's accused lenses met the "surface layer" and "soft" limitations of the asserted claim. Following trial, the jury returned a verdict of noninfringement. The district court, in the alternative, granted judgment as a matter of law that Rembrandt failed to prove that the accused lenses were "soft." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.* (*JMOL Order*), 282 F.R.D. 655, 668 (M.D. Fla. 2012). We affirmed the district court's grant of JMOL. *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.* (*Rembrandt I*), 725 F.3d 1377 (Fed. Cir. 2013).

At trial, Rembrandt relied on expert testimony from Dr. Thomas Beebe to prove that the accused lenses met both the "surface layer" and "soft" claim limitations. During his direct examination regarding the "soft" limitation, Dr. Beebe presented test results to show that the accused lenses met this limitation. During cross-

examination, however, Dr. Beebe drastically changed his testimony regarding the testing methodology he used. Because his testimony on cross-examination significantly conflicted with both his testimony during his direct examination and the testing methodology disclosed in his expert report, the district court ultimately struck Dr. Beebe's trial testimony regarding this testing. After noting that Dr. Beebe's stricken testimony was the only evidence that Rembrandt advanced to prove the accused lenses were "soft" in opposing JJVC's motion, the district court granted JMOL that JJVC did not infringe. *JMOL Order*, 282 F.R.D. at 668.

In turn, JJVC relied on expert testimony from Dr. Christopher Bielawski to support its position that its accused lenses did not meet the "surface layer" limitation, but did not present expert testimony with respect to the "soft" limitation. During the course of his trial testimony, Dr. Bielawski took advantage of several opportunities to impugn Dr. Beebe's credibility. For example, Dr. Bielawski described Dr. Beebe's failure to correct allegedly incorrect data as "misleading and tantamount to dishonesty." Joint Appendix ("J.A.") 4683. JJVC also capitalized on Dr. Beebe's changing testimony. During his closing argument, JJVC's counsel urged that "[y]ou should not trust Dr. Beebe, and you should throw out his testimony, not in part, but in whole. You should not trust Dr. Beebe." J.A. 5159.

After trial, Rembrandt received information suggesting that Dr. Bielawski testified falsely at trial. Although the district court denied Rembrandt's request for post-trial discovery, Rembrandt received much of the discovery it sought from Dr. Bielawski's employer, the University of Texas, through an open records request and state court

litigation.  In light of that discovery, the parties do not dispute that Dr. Bielawski testified falsely during trial.[1]

Specifically, Dr. Bielawski repeatedly testified that he personally conducted X-ray photoelectron spectroscopy ("XPS") and time-of-flight secondary ion mass spectrometry ("TOF-SIMS") laboratory testing on JJVC's accused lenses when, in fact, the testing was conducted by Dr. Bielawski's graduate students and various lab supervisors.  The post-trial discovery suggests that Dr. Bielawski was not even in the country when some of the testing was done.  Moreover, the post-trial discovery suggests that Dr. Bielawski overstated his qualifications and experience with these testing methodologies.  Whereas Dr. Bielawski was presented to the jury as an expert in TOF-SIMS testing, he actually "had no TOF-SIMS experience whatseover."  J.A. 5437.  As such, for the purpose of considering the Rule 60(b) motions, the district court "assume[d] . . . that Dr. Bielawski testified falsely when he said that he personally performed . . . tests, and about his qualifications as an expert in performing those tests." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.* (*Rule 60 Order*), 300 F.R.D. 694, 698 (M.D. Fla. 2014).

In addition to showing Dr. Bielawski's false testimony, the post-trial discovery revealed that Dr. Bielawski withheld test results and data analysis that would have undermined his opinions and trial testimony.  In particular, Dr. Bielawski withheld data from tests conducted on third-party contact lenses previously found to infringe the

---

[1]    Because perjury is a crime and Dr. Bielawski is not a party to this litigation, we express no opinion as to whether Dr. Bielawksi committed perjury.  Instead, we accept, for the purpose of deciding this case, the parties' and district court's conclusion that Dr. Bielawski testified falsely at trial.

asserted claim. JJVC provided the samples of these lenses to Dr. Bielawski and requested that he perform "any initial setup experiments" on the third-party lenses in order to "satisfy[] himself with respect to the proper investigational techniques to be used on contact lenses." J.A. 5576. The test results generated in response to JJVC's request were not produced before trial, and JJVC claims that it was unaware that any data had been generated. Had these test results been produced to Rembrandt, they would have shown that the infringing lenses do not have a surface coating of about 20 nanometers, undermining Dr. Bielawski's testimony at trial. Specifically, Dr. Bielawski testified at trial without contradiction about the differences between JJVC's accused lenses and the infringing third-party lenses, explaining that the infringing lenses "have a surface coating that [is] about 20 nanometers," J.A. 4697, whereas JJVC's accused lenses do not. JJVC's counsel emphasized Dr. Bielawski's testimony on this point as proof of noninfringement during closing argument:

> And guess what, this point 20 is not picked out of thin air. It's exactly what happens when you look at the [infringing third-party] lens.

J.A. 5142.

In light of this post-trial discovery, Rembrandt moved for a new trial under Rules 60(b)(2) and (3), which state:

> On motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (2) newly discovered evidence, that with reasonable diligence, could not have been discovered in time to move to a new trial under Rule 59(b); [or] (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

Following a lengthy hearing on the issue, the district court denied Rembrandt's motion. With little discussion, the district court dismissed Rembrandt's argument that the withheld documents prevented it from fully and fairly presenting its case. The district court thus limited its analysis to Dr. Bielawski's false testimony. The district court concluded that Rembrandt was not entitled to a new trial under Rule 60(b)(2) because Rembrandt had not satisfied the requirement in the Eleventh Circuit that a new trial would probably produce a new result. And it concluded that Rembrandt was not entitled to a new trial under Rule 60(b)(3) because JJVC's counsel was not complicit in the false testimony and because Rembrandt was not prevented from fully and fairly presenting its case. Rembrandt then renewed its motion to reopen discovery into JJVC's awareness of Dr. Bielawski's misconduct, but the district court denied that motion too.

Rembrandt appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review procedural questions such as the district court's denial of a Rule 60(b) motion under the law of the regional circuit, here the Eleventh Circuit. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1357 (Fed. Cir. 2008). The Eleventh Circuit reviews district court decisions on Rule 60(b) motions for an abuse of discretion. *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Under Eleventh Circuit law, the district court abuses its discretion if it: (1) applies an incorrect legal standard; (2) follows improper procedures in making the determination; or (3) makes findings of fact that are clearly erroneous. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

We first consider Rembrandt's motion for a new trial under Rule 60(b)(3), which permits a district court to grant a new trial in cases involving "fraud (whether

previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). To prevail on a motion under Rule 60(b)(3) in the Eleventh Circuit, the movant must establish that: (1) the adverse party engaged in fraud or other misconduct; and (2) this conduct prevented the moving party from fully and fairly presenting its case. *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1503 (11th Cir. 1985), *vacated in part on other grounds*, 866 F.2d 1303 (11th Cir. 1989). Proof that the result of the case would have been different but for the fraud or misconduct is not required; instead, Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) [2] (internal citations omitted); *see also Wilson v. Thompson*, 638 F.2d 801, 804 (5th Cir. 1981) ("We recognize that a party moving under Rule 60(b)(3) may prevail without showing that the alleged fraud affected the outcome of the prior trial.").

## I.

We start with the easier question of whether Rembrandt had a full and fair opportunity to present its case given Dr. Bielawski's false testimony and withholding of relevant documents. In denying Rembrandt's motion under Rule 60(b)(3), the district court concluded that "even accounting for Dr. Bielawski's misconduct, Rembrandt was not prevented from making its case," and explained that this holds true "even without considering that JJVC was entitled to judgment as a matter of law because Rembrandt failed to present evidence on an essential element of its case." *Rule 60 Order*, 300 F.R.D. at 701 & n.9. The district court also summarily dismissed

---

[2] Fifth Circuit precedent prior to September 30, 1981 is binding on the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Rembrandt's argument that it was prevented from fully and fairly presenting its case due to the withheld documents as "murky at best." *Id.* at 697 n.1. We conclude that the district court clearly erred in finding that Rembrandt had a full and fair opportunity to present its infringement case.

Dr. Bielawski testified on a central infringement issue at trial—whether JJVC's accused lenses met the "surface layer" claim limitation. In doing so, he testified falsely about his personal involvement in the testing, as well as his experience with the relevant testing methodologies. **[A8]** He also withheld contradictory test results on third-party lenses known to infringe and generated at the request of JJVC's counsel. Because these test results were not produced, Dr. Bielawski testified without contradiction about alleged differences between the accused lenses and the third-party lenses to show that the accused lenses did not have the claimed surface layer. JJVC's counsel emphasized these differences as proof of noninfringement in his closing argument. In addition, Dr. Bielawski and JJVC's counsel seized several opportunities to impugn the credibility of Dr. Beebe, but the jury never heard that Dr. Bielawski had presented false testimony. Under these circumstances, we cannot agree with the district court that this conduct did not prevent Rembrandt from fully and fairly presenting its infringement case. The verdict was irretrievably tainted by Dr. Bielawski's false testimony and Dr. Bielawski's and JJVC's withholding of relevant documents. While we do not know the exact impact the false testimony would have had on the jury, the false testimony may well have been critical to the noninfringement verdict and the jury may well have been impacted upon learning that Dr. Bielawski committed an act at least as egregious as Dr. Beebe's.

JJVC and the dissent nonetheless assert that the district court did not abuse its discretion, relying on a rationale different from that of the district court.

Specifically, JJVC argues that Rembrandt had a full and fair trial because Dr. Bielawski did not testify regarding the "soft" limitation and Rembrandt cannot show that the false testimony and improperly withheld documents resulted in substantial impairment of its ability to present its case on the "soft" limitation. We are not convinced by JJVC's argument.

The district court granted JMOL, not because of the merits of JJVC's noninfringment position, but because its exclusion of Dr. Beebe's unreliable testimony compelled that result. The district court judge acknowledged that he may well have responded differently had he been aware at the time of Dr. Bielawski's false testimony. During the hearing regarding the Rule 60 motions, he explained:

> I guess my problem with it is – is that – or my query is that – I don't think I – I'm not sure I would have gotten to that place [of granting judgment as a matter of law] – or I sure – I may have gotten to that place differently – or I may – something different may have happened if I had known at the time – Dr. Beebe's shortcomings came out during the trial.

> And they were obvious and – and I made my ruling based on what I saw, noting, also, that as I recall it you were able to, with the jury, take great advantage of his implosion.

> And so you kind of got – you kind of got a double whammy. You got me ruling as a matter of law to strike his testimony. But you also got to argue to the jury that – that one of their experts had – was unworthy of any credence. And so you got to do all that because Dr. Beebe's malfeasance came out during the trial.

August 2, 2013 Motion Hearing, J.A. 7440–41. In the order denying Rembrandt's Rule 60(b)(3) motion, the

district court also acknowledged that Dr. Bielawski's misconduct was at least as egregious as Dr. Beebe's:

> This was a serious and detrimental occurrence. It insulted the jury, violated the integrity of the judicial process, and interfered with the search for the truth that is the hallmark of our trial-by-jury system. Moreover, this false testimony was given in a highly contested patent case in which an expert for Rembrandt, Dr. Beebe, radically changed his expert testimony during the middle of his examination. As a result, the Court struck his testimony and entered an alternative Rule 50 judgment against Rembrandt because it was unable to prove a required element of its case without Dr. Beebe's testimony. . . . Now, having learned post-trial that JJVC's expert likely lied on the stand, arguably committing an act at least as egregious as Dr. Beebe's, it is a fair question to ask whether Rembrandt should be entitled to a new trial.

*Rule 60 Order*, 300 F.R.D. at 698.

On this record, we cannot agree that Rembrandt had a full and fair trial on the "soft" limitation. We rejected an argument similar to JJVC's in *Fraige v. American-National Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993). In *Fraige*, the defendant forged a prior art document. *Fraige*, 996 F.2d at 296. Although the forged document was not presented to the jury, several witnesses who testified at trial had reviewed the document. *Id.* at 296, 298. We explained that we could not accurately determine the impact of the forged document on the jury, noting that "[w]hen it became known that the jury was presented testimony based on fraudulent documentation, where that testimony was relevant and material to the issue of patent validity, *all of the jury's invalidity findings became suspect*." *Id.* at 299 (emphasis added). Although

an arguably "independent" ground of invalidity existed in *Fraige*—invalidity under 35 U.S.C. § 112—we nevertheless reversed the district court's denial of a new trial under Rule 60(b)(3).[3] We concluded that where the impact of the tainted evidence on the allegedly "independent" ground of invalidity could not be ascertained, the independent ground was not a basis for denying the request for a new trial. *Id.* at 299–300.

Similarly, here, we will not speculate as to what impact the fraud and misconduct had on the ultimate judgment of noninfringement where the false testimony and withheld documents were material to the issue of patent infringement and could well have impacted the jury's verdict, as well as the district court's decision to exclude Dr. Beebe's testimony and consequently grant JMOL on the "soft" limitation. We agree with Rembrandt that it was prejudiced by the withholding of third-party test results and by the false testimony. As the Fifth Circuit held in *Rozier*, Rembrandt is not required to prove that the withheld documents were of such nature as to alter the result in the case. 573 F.2d at 1339. Instead, Rembrandt need only show that timely production of the documents would have made a difference in the way Rembrandt's counsel approached the case or prepared for trial. *Id.* at 1342. Here, Rembrandt could have deposed

---

[3] The dissent asserts that *Fraige* is inapposite, contending that "our reasoning was that relief was available not under Rule 60(b)(3) but under the savings clause in Rule 60." We disagree. The Court's decision in *Fraige* rested on Rule 60(b)(3). Indeed, the Court specifically stated that "[t]he effect of the tainted evidence on the section 112 defense, while less certain, cannot be ascertained and therefore is similarly not a basis for denying the Rule 60(b)(3) motion for relief from the patent invalidity judgment." 996 F.3d at 299–300 (footnote omitted).

the individuals who actually conducted the testing for JJVC. JJVC based its noninfringement argument at trial nearly exclusively on the surface layer limitation. Knowing the weaknesses in JJVC's evidence regarding the surface layer limitation could well have changed the nature of the entire proceedings. We cannot and will not speculate about the profound effects knowledge of the withheld documents and falsified testimony of JJVC's primary witness would have had on the proceedings and the district court's JMOL. Suffice it to say that this raises a substantial question undermining the judgment of noninfringement.

Finally, we note that Rembrandt presented additional evidence at trial to show that JJVC's accused lenses satisfied the "soft" limitation. For example, JJVC stipulated that the accused lenses are silicone hydrogel contact lenses, and the record contains evidence that suggests silicone hydrogel contact lenses yield a Shore D test result of zero. The dissent states that Rembrandt failed to raise this evidence in response to JJVC's JMOL motion. It is true, as we noted in our prior opinion, Rembrandt identified only Dr. Beebe's testimony when responding to JJVC's JMOL motion. *Rembrandt I*, 725 F.3d at 1383. Had Dr. Beebe's testimony not been stricken, it certainly would have prevented the court from entering JMOL in favor of JJVC. In addition, although not relied on by Rembrandt in responding to JJVC's JMOL motion, there was additional evidence in the trial record that the accused lenses met the "soft" limitation. In light of this record, we cannot conclude that Rembrandt had a full and fair trial on infringement.

## II.

We next look to whether Rembrandt established that "the adverse party engaged in fraud or other misconduct." *Harre*, 750 F.3d at 1503 (citation omitted). We conclude that the district court abused its discretion in concluding

otherwise. Specifically, the district court erred by summarily dismissing Rembrandt's allegations of misconduct and by requiring proof that JJVC or its counsel was complicit in Dr. Bielawski's false testimony.

Rembrandt alleges fraud based on Dr. Bielawski's false testimony and misconduct based on Dr. Bielawski and JJVC's failure to produce the contradictory test results on third-party lenses. Each allegation forms an independent basis for a new trial under Rule 60(b)(3). JJVC does not dispute that Dr. Bielawski testified falsely and that it never produced the test results for the third-party lenses. Instead, JJVC argues that Rule 60(b)(3) cannot provide relief because JJVC was not complicit in the fraud or the misconduct. Considering only Dr. Bielawski's false testimony, the district court held that Rembrandt was not entitled to a new trial under Rule 60(b)(3) because it had not shown that either JJVC or its counsel was complicit in any fraud or misconduct.

Turning first to Rembrandt's allegations of misconduct, we agree with Rembrandt that the district court erred by failing to fully address Rembrandt's allegations of misconduct and requiring proof of complicity. As used in Rule 60(b)(3), "'[m]isconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress. . . . The term can cover even *accidental* omissions—elsewise it would be pleonastic, because 'fraud' and 'misrepresentation' would likely subsume it." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) (emphasis added); *see also Bros Inc. v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965) ("The effect [of misconduct] was the same whether there was evil, innocent or careless, purpose.").

JJVC admits that it provided samples of third-party lenses to Dr. Bielawski to conduct "initial set up experiments" on the lenses. The relevance of these tests to JJVC's noninfringement defense cannot be disputed—

Dr. Bielawski testified about differences between JJVC's accused lenses and the third-party lenses that were known to infringe and JJVC's counsel emphasized these differences during his closing argument.

JJVC argues that a new trial is not warranted because it "was unaware of any testing of these lenses." Appellee Br. 28. JJVC's argument strains credulity, given that it provided the lenses to Dr. Bielawski and talked about them during closing argument. But we need not determine whether JJVC's failure to obtain and produce this data was intentional or merely accidental; as explained above, even an accidental omission qualifies as misconduct under Rule 60(b)(3).

Turning next to Rembrandt's allegations of fraud, the district court concluded that Rule 60(b)(3) requires proof of JJVC's complicity in the false testimony, relying heavily on *Harre*, 750 F.2d 1501, as well as cases outside of the Eleventh Circuit. Rembrandt argues that the district court misinterpreted Eleventh Circuit precedent by requiring proof of complicity to satisfy Rule 60(b)(3). We agree.

Although evidence of complicity was considered by the Eleventh Circuit in *Harre*, the court did not announce a rule *requiring* such evidence to prevail on a Rule 60(b)(3) motion. The district court in this case acknowledged as much, stating that "the *Harre* court did not expressly limit its holding to circumstances in which counsel is complicit with witness misconduct . . . ." *Rule 60 Order*, 300 F.R.D. at 699. Instead, after concluding that the appellant had "presented sufficient evidence to support the allegation that [the expert] committed perjury," the *Harre* court turned to the second inquiry under Rule 60(b)(3)—"whether the conduct complained of prevented Appellants from fully and fairly presenting their case." *Harre*, 750 F.2d at 1504–05. Although the *Harre* court also determined that counsel "must have been

aware" of the perjury and expressed deep concern in view of that determination, it did not suggest that relief under Rule 60(b)(3) would otherwise have been unavailable. *See id.* at 1505. Consistent with our understanding, a subsequent Eleventh Circuit case cited *Harre* for the proposition that mere "perjury constitutes fraud under [Rule] 60(b)(3)." *See Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.7 (11th Cir. 1988). The Fifth Circuit has also recognized that Rule 60(b)(3) is remedial and should be liberally construed. *Rozier*, 573 F.2d at 1346.

Likewise, we have previously affirmed a grant of a new trial under Rule 60(b)(3) in view of an expert's perjured testimony, even when it was undisputed that the party was unaware of the perjury. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001). In *Viskase*, an expert witness lied about his personal involvement in laboratory testing concerning alleged infringement. *Id.* Although there was no evidence that the sponsoring party or its counsel was aware of the expert's perjury, the district court had determined that the party's counsel "surely knew there must have been additional documents and that there were additional tests conducted" that had not been produced, and, as a result, "conclude[d] that [the party] cannot escape responsibility for [the expert's] testimony." *Viskase Corp. v. Am. Nat'l Can Co.*, 979 F. Supp. 697, 705 (N.D. Ill. 1997). In affirming the district court's grant of a new trial, we "agree[d] with the district court that the jury verdict was irretrievably tainted and was properly set aside." *Viskase*, 261 F.3d at 1324. We are presented with very similar facts here. Although JJVC may have been unaware of Dr. Bielawski's false testimony, JJVC should have known that additional tests were conducted and additional documents were generated. Indeed, it provided samples of the third-party lenses to Dr. Bielawski, requested that he conduct initial testing on those lenses, and questioned Dr. Bielawski on the same subject matter during trial.

At bottom, the district court erred by concluding that the Eleventh Circuit would require proof that JJVC or its counsel was complicit in Dr. Bielawski's false testimony. In this most unusual case involving false testimony by both parties' experts and misconduct, we cannot agree that the Eleventh Circuit would require complicity in Dr. Bielawski's false testimony. While the district court gave thoughtful consideration to Rembrandt's Rule 60(b)(3) motion and to the integrity of the judicial process, it erred in requiring complicity and summarily dismissing Rembrandt's separate allegation of misconduct. We thus conclude that the district court abused its discretion in denying Rembrandt's motion for a new trial under Rule 60(b)(3).

## III.

Because we reverse the district court's denial of Rembrandt's motion for a new trial under Rule 60(b)(3), we do not consider whether the district court abused its discretion in denying Rembrandt's Rule 60(b)(2) and discovery motions. We also reject JJVC's argument that the mandate rule precludes consideration of Rembrandt's Rule 60(b) motions. Our prior decision in this case did not address, explicitly or implicitly, Rembrandt's request for a new trial under Rule 60(b). *See Rembrandt I*, 725 F.3d 1377.

## CONCLUSION

We hold that the district court abused its discretion in denying Rembrandt's motion for a new trial under Rule 60(b)(3). We therefore reverse and remand for a new trial.

**REVERSED AND REMANDED**

# United States Court of Appeals
## for the Federal Circuit

---

**REMBRANDT VISION TECHNOLOGIES, L.P.,**
*Plaintiff-Appellant*

**v.**

**JOHNSON & JOHNSON VISION CARE, INC.,**
*Defendant-Appellee*

---

2015-1079

---

Appeal from the United States District Court for the Middle District of Florida in No. 3:11-cv-00819-TJC-JRK, Judge Timothy J. Corrigan.

---

DYK, *Circuit Judge*, dissenting.

This case presents two important questions about the interpretation of Rule 60(b)(3) of the Federal Rules of Civil Procedure in the context of false testimony by an expert witness. The first is whether a showing by a movant that it lacked a "full and fair" opportunity to present its case requires some showing that the result could have been affected by the false testimony. The second is whether false testimony by an expert witness can be attributed "to the opposing party" (as required by the rule) without a showing of knowledge or reason to

know that the testimony was false.  I respectfully suggest that the majority is wrong on both counts.

I

Relying on Rule 60(b)(3), Rembrandt sought to set aside a summary judgment of non-infringement of the asserted claim of U.S. Patent No. 5,712,327 ("the '327 patent") based on false testimony of Johnson & Johnson Vision Care's (JJVC's) expert witness, Dr. Christopher Bielawski.  The district court denied relief.

To succeed on a motion under Rule 60(b)(3), it is not necessary to establish that the fraud "alter[ed] the result in the case."  *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).  But, the movant must demonstrate by clear and convincing evidence that the alleged fraud or misconduct prevented it "from fully and fairly presenting his case or defense."  *Cox Nuclear Pharm., Inc. v. CTI, Inc.*, 478 F.3d 1303, 1305 (11th Cir. 2007); *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1503 (11th Cir. 1985); *see also* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2860 & n.12 (3d ed. 2012) (noting that to qualify for relief under the rule, "the fraud must have prevented the moving party from fully and fairly presenting his case," and citing cases).  In other words, the moving party must demonstrate that the misconduct "substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial."  *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988).  In my view, the majority's decision effectively eliminates this requirement, and errs in reversing the district court's determination that this standard was not met.

At the original trial, JJVC argued for a finding of non-infringement based on two limitations of asserted claim 1 of the '327 patent.  The claim requires contact lenses that are both (1) "soft" and (2) have a "tear-wettable surface layer."  '327 patent, col. 8 ll. 2–16.  These are separate and

independent limitations.  For example, both "hard" and "soft" contact lenses can be coated with a material to make the lenses more "tear-wettable."  Similarly, the patent itself describes prior art "soft" lenses that lack a surface layer.  Thus, to prevail in its infringement case, Rembrandt had the burden of independently proving (1) that the accused contact lenses were "soft" <u>and</u> (2) that the accused lenses had a surface layer.  In this case, two witnesses testified falsely, one for each side and one on each issue.

The district court construed "soft" to mean "having a Hardness (Shore D) of less than 5" on the Shore scale—an accepted standard for hardness.  *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 657 (M.D. Fla. 2012) (*"JMOL Order"*).  In other words, to meet the claim limitation, the accused lenses had to have a value of less than five according to a commonly used testing and measurement method for hardness.

Rembrandt's expert witness, Dr. Thomas Beebe, Jr., testified that the accused contact lenses met the "soft" limitation of the patent claim.  During his testimony about the "soft" limitation, "Dr. Beebe's trial testimony did not match the opinions disclosed in his expert report." *Rembrandt Vision Techs. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1379 (Fed. Cir. 2013) (*"Rembrandt I"*).  "In fact, the differences . . . [were] so substantial that Dr. Beebe essentially performed an entirely different test" than he had described in his expert report. *JMOL Order*, 282 F.R.D. at 663.  During what the district court described as an "implosion" on the stand, Dr. Beebe "completely changed his testimony" during cross-examination.  *Id.* at 668.  Accordingly, after trial, the district court excluded Dr. Beebe's testimony and, because "Dr. Beebe's testimony was the only evidence presented at trial that showed that the accused lenses met the 'soft'

limitation," the district court granted JJVC's motion for judgment as a matter of law ("JMOL") that the accused lenses did not infringe because they did not meet the "soft" limitation. *Rembrandt I,* 725 F.3d at 1383. On appeal, we affirmed the district court's exclusion of Dr. Beebe's testimony and the subsequent grant of JMOL. *Id.* at 1378.

A different scenario played out with respect to the "surface layer" limitation. The district court construed the "surface layer" limitation to mean "a layer beginning from and including the outermost surface and moving inward to an arbitrary depth of the lens and having a different composition from the 'body' portion of the lens." *Rembrandt Vision Techs. L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 11-cv-0819, ECF No. 300 (Transcript of May 10, 2012), at 295. In other words, to infringe, contact lenses must contain an outer layer made up of a different material than the rest of the contact lens. JJVC's expert witness, Dr. Bielawski, testified that the accused products did not meet the surface layer limitation.

After trial, Rembrandt discovered that Dr. Bielawski had falsely testified about his credentials and about who had performed the testing in his expert report. Rembrandt also discovered that data from Dr. Bielawski regarding surface-layer testing of third party lenses had been withheld. As the majority notes, Dr. Bielawski testified for JJVC "to support its position that its accused lenses did not meet the 'surface layer' limitation, but did not present expert testimony with respect to the 'soft' limitation." Maj. Op. at 3.

The question here is whether Dr. Bielawski's later-discovered false testimony about the "surface layer" limitation should result in re-opening the district court's JMOL of non-infringement based on the plaintiff's failure

to produce any evidence in response to the JMOL motion (absent Dr. Beebe's stricken testimony) that the accused lenses met the "soft" limitation. The district court correctly concluded that the JMOL should not be reopened because Rembrandt was not deprived of a full and fair opportunity to present its case on the "soft" limitation—an issue which was dispositive of non-infringement.

I note at the outset that the majority incorrectly focuses on the jury verdict of non-infringement. See, e.g., Maj. Op. at 8 ("The verdict was irretrievably tainted by Dr. Bielawski's false testimony and Dr. Bielawski's and JJVC's withholding of relevant documents. While we do not know the exact impact the false testimony would have had on the jury, the false testimony may well have been critical to the noninfringement verdict and the jury may well have been impacted upon learning that Dr. Bielawski committed an act at least as egregious as Dr. Beebe's.") Whether the jury verdict was tainted by Dr. Bielawski's testimony about Dr. Beebe is not relevant. The jury verdict is not under review here; the district court's grant of JMOL (on the "soft" limitation only) is, and the district court did not rely on Dr. Bielawski's testimony in granting JMOL.

In this respect, to succeed on the Rule 60(b)(3) motion for a new trial, Rembrandt was required to show that the false testimony resulted in a substantial impairment of its ability to present its case on the "soft" issue. "Substantial impairment may exist, for example, if a party shows that the [misconduct] precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Anderson*, 862 F.2d at 925. But if the misconduct is related to evidence that is "cumulative, insignificant, or of marginal relevance," "retrial would needlessly squander judicial resources." *Id.* at 924.

Rembrandt's only argument as to substantial impairment is that it "could have moved for summary judgment on the surface layer issue—or streamlined its trial evidence on the issue—and thus had more time to present additional evidence regarding the 'soft' nature of the accused lenses." Reply Br. at 24. In other words, Rembrandt speculates that it would have spent more time preparing its case for the "soft" limitation and could have potentially prevented Dr. Beebe's meltdown on the stand. And the majority asserts that the existence of such a possible reallocation of resources is sufficient, stating that "[k]nowing the weaknesses in JJVC's evidence regarding the surface layer limitation could well have changed the nature of the entire proceedings. We cannot and will not speculate about the profound effects knowledge of the [alleged misconduct] would have had on the proceedings and the district court's JMOL." Maj. Op. at 12. Under this standard, it is hard to see any case where, after a party proves misconduct of any kind, that party would not be afforded relief. In effect, the majority's holding renders the "full and fair" requirement a nullity. Neither Rembrandt nor the majority can point to any case where Rule 60(b)(3) relief has been granted based on such speculation.

The authority is uniformly to the contrary. The standard before Rule 60 was adopted was quite clear. "[T]o justify setting aside a decree for fraud whether extrinsic or intrinsic, it must appear that the fraud charged <u>really</u> prevented the party complaining from making a full and fair defense." *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 421 (1923) (emphasis added). "If it does not so appear, then proof of the ultimate fact, to wit, that the decree was obtained by fraud fails." *Id.* This requires a showing of how "the complaining party was, without his fault, deprived of his opportunity to present his defense on the merits. . . . Chancery

will intervene, therefore, only when the complainant was prevented from presenting a meritorious defense by the inequitable conduct of his adversary unmixed with negligence or fault on his own part." *In re Innis*, 140 F.2d 479, 481 (7th Cir. 1944). "[I]t [is] an imperative condition of such relief that the party seeking it shall make it clearly appear that he had a good defense to the action, which, by fraud or accident, he was prevented from making, and also that there was neither fault nor negligence on his part." *Talbott v. Pickford*, 36 App. D.C. 289, 298 (D.C. Cir. 1911), *aff'd sub nom.*, 225 U.S. 651 (1912). This common law equity standard was incorporated into the Rule 60(b)(3) standard. *Rozier*, 573 F.2d at 1339 (citing *Toledo Scale*, 261 U.S. at 421).

Under Rule 60(b)(3), when the alleged misconduct is related to issues that "are essentially irrelevant to the legal issues upon which the case turned," relief from the judgment is not warranted. *Simons v. Gorsuch*, 715 F.2d 1248, 1253 (7th Cir. 1983); *see also PMC, Inc. v. Atomergic Chemetals Corp.*, No. 95-7509, 1995 WL 595557, at *1 (2d Cir. Sep. 25, 1995) (unpublished decision) (finding claim of lack of a full and fair opportunity "to be without merit" when an expert lied about his credentials because the misconduct "did not have 'such a close nexus to the issues'" relevant in the case); *Anderson*, 862 F.2d at 931 (relief under Rule 60(b)(3) should not be granted where the misconduct "would have had no effect on the result" of the case).

A review of cases where Rule 60(b)(3) motions have been granted shows that relief is only granted when the misconduct involves material, relevant evidence; in other words, when knowing about the misconduct actually could have made a difference. *See, e.g.*, *Abrahamsen v. Trans-State Express., Inc.*, 92 F.3d 425, 430 (6th Cir. 1996) (plaintiff in a tort action resulting from a car accident entitled to a new trial because defendant's attorney

withheld evidence of a statement by defendant's driver that he "dozed off" while driving, leading to the accident); *Rozier*, 573 F.2d at 1339, 1342–43 (defendant improperly withheld an internal cost/benefit report showing the defendant's knowledge of the defect and rejecting a safer design; the report "would have" affected plaintiff's approach to the design-defect tort case, and the plaintiff was "prejudiced"); *Seaboldt v. Pa. R.R. Co.*, 290 F.2d 296, 299 (3d Cir. 1961) (defendant entitled to a new trial in a personal injury case relating to a back injury because plaintiff's counsel failed to supply information concerning a chiropractor who would have testified that he "had treated the plaintiff previously for a 'chronic' back ailment" before the alleged injury.).

*Fraige v. American-National Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993), relied on by the majority, is not to the contrary. In that case, counsel for the accused infringer had submitted to the court "false and forged documentation" about a supposed prior art reference. *Id.* at 296. The motion was made under Rule 60(b)(3), and we held that relief should have been granted under that rule. However, our reasoning was that relief was available not under Rule 60(b)(3) but under the savings clause in Rule 60, which allows a court to "entertain an independent action for fraud on the court." Fed. R. Civ. P. 60(d)(1); *see also Fraige*, 996 F.2d at 297 (citing the savings clause). As the Advisory Committee Note to the rule explains, "the rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, *see Hazel-Atlas Glass Co. v. Hartford Empire Co.*," 322 U.S. 238 (1944).[1] Fed. R. Civ. P. 60(b) Advisory Committee

---

[1]    Fraud on the court, not even alleged in this case, constitutes "an unconscionable plan or scheme which is

Note to the 1946 Amendments. We found in *Fraige* that "[l]ike *Hazel-Atlas*, [the defendant's] fraudulent conduct was a wrong against the judicial system as well as against [the plaintiff.]" 996 F.2d at 299. Appropriately, we found that a new trial was necessary because for more serious "fraud on the court" (unlike Rule 60(b)(3)), the moving party need not demonstrate prejudice to receive relief from a judgment because "a decision produced by fraud on the court is not in essence a decision at all, and never becomes final." *Kenner v. Comm'r of Internal Revenue*, 387 F.2d 689, 691 (7th Cir. 1968). *Fraige* is not authority for the proposition that Rule 60(b)(3) does not require a showing of lack of full and fair opportunity.

Rembrandt has failed to show how knowledge of Dr. Bielawski's misconduct would have changed its approach to the "soft" limitation. The JMOL was based entirely on the exclusion of Dr. Beebe's testimony because of his "abrupt and still unexplained implosion" that "led to the derailment of the trial" on the softness issue. J.A. 7444.[2]

---

designed to improperly influence the court," and, unlike fraud referenced in Rule 60(b)(3), involves the "integrity of the court itself." Charles Alan Wright, et al., *Federal Practice and Procedure* § 2870 (2012). In *Hazel-Atlas*, for example, the Supreme Court found that the patent-holder's "flagrant" and "deliberate" plan to deceive both the Patent Office and the district court "call[ed] for nothing less than a complete denial of relief [] for the claimed infringement of the patent thereby procured and enforced." *Hazel-Atlas*, 322 U.S. at 250.

[2] Although the district court deferred action on the JMOL until after the jury verdict, it could have granted the relief at the end of the presentation of Rembrandt's case. If it had done so, Dr. Bielawski would never even have testified.

The majority suggests that there was other evidence in the trial record that the accused lenses met the "soft" limitation, but such evidence was not raised by Rembrandt in response to the JMOL motion. Maj. Op. at 12. In the first appeal, we held that Rembrandt had not preserved the right to argue this evidence in connection with the JMOL motion.[3] I fail to see how the decision by Rembrandt not to raise this evidence could have even arguably been affected by Dr. Bielawski's false testimony.

In any event, Rembrandt's decision not to raise this evidence represents a strategic litigation choice. Rule 60(b)(3) cannot be used to allow a party to escape its own negligence in developing its case. Courts routinely deny Rule 60(b)(3) motions when a party loses not because of the alleged fraud but because of its own failings. "When a party is capable of fully and fairly preparing and presenting his case notwithstanding the adverse party's arguable misconduct, the trial court is free to deny relief under Rule 60(b)(3)." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 22 (1st Cir. 2002); *see also Diaz v. Methodist Hosp.*, 46 F.3d 492, 497 (5th Cir. 1995). Nothing about Dr. Bielawski's misconduct regarding the "surface layer" limitation prevented Rembrandt from raising other evidence on the softness issue in response to the JMOL motion.

---

[3]      Specifically, we found that "[i]n opposing JJVC's motion for judgment as a matter of law, Rembrandt only pointed to Dr. Beebe's trial testimony. Moreover, Rembrandt conceded at the post-trial hearing that Dr. Beebe's testimony was the only evidence presented at trial that showed that the accused lenses met the 'soft' limitation. . . . We decline to upend the district court's decision on a basis that was not raised below." *Rembrandt I,* 725 F.3d at 1383 (emphasis added).

Quintessentially, the resolution of a Rule 60(b)(3) motion is a matter of discretion for the district court judge, who sat during the entire trial and is most intimately familiar with the reasoning for his own statements and previous order. Here the district court concluded that no retrial was appropriate. In an effort to suggest that the district court would have reached a different result if it had applied a different standard, both Rembrandt and the majority point to ambiguous statements by the district court during the Rule 60 hearing when the trial judge, before reaching his final decision on the motion, speculated that the false testimony might have somehow affected the JMOL decision as to the soft limitation. But, as noted, Dr. Bielawski offered no testimony on the "soft" limitation, and the district court made no finding of any such relationship in its final decision.[4] At best, the district court's statements suggest that a remand to the district court might be appropriate to reconcile the final order and the court's earlier statements.

In short, the record here demonstrates that Rembrandt failed to produce any credible evidence on one element of its case. That failure had nothing to do with Dr. Bielawski's false testimony. In the prior appeal, we affirmed that the district court acted properly in excluding Dr. Beebe's testimony and in granting JMOL of non-

---

[4] In the final order, the district court found that "[w]hat Rembrandt mainly lost here was an opportunity to discredit or eliminate an expert witness who . . . was not required for JJVC to win the case. When the trial is looked at in its totality, even accounting for Dr. Bielawski's misconduct, Rembrandt was not prevented from making its case." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 300 F.R.D. 694, 701 (M.D. Fla. 2014) ("*Rule 60 Order*").

infringement based on the lack of evidence.  That previous determination should not be disturbed by a subsequent discovery of false testimony about an entirely different issue.

## II

There is also, in my view, a second error in the majority opinion.  Under Rule 60(b)(3), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if there was "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  I also disagree with the majority's conclusion (contrary to that of the district court) that the rule does not require any evidence that the misconduct was attributable to "the opposing party" as required by the text of Rule 60(b)(3).

The majority finds that the district court erred in "requiring proof of [JJVC's] complicity" in Dr. Bielawski's false testimony.  Maj. Op. at 13.  According to the majority, "[i]n this most unusual case involving false testimony by both party experts, we cannot agree that the Eleventh Circuit would require complicity in Dr. Bielawski's false testimony."  *Id.* at 15.

The two other circuits that have confronted the issue have reached the opposite conclusion.  As the Seventh Circuit explained, "[e]xpert witnesses . . . are free agents. Parties and counsel have an obligation not to deceive the court about the witness and to correct statements they know to be false, but they are not responsible for the details of the witness's testimony." *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 833 (7th Cir. 1985).  Thus, the Seventh Circuit held that, absent evidence that "the adverse party procured or knew of any false testimony," relief under Rule 60(b)(3) is not available.  *Id.* at 832; *see also Richardson v. Nat'l R.R. Passenger Corp.*, 49 F.3d

760, 765 (D.C. Cir. 1995) (declining to "substitute a less restrictive limitation" under Rule 60(b)(3) for attribution to a party misconduct of another "for the one expressly adopted under the Rules"). The majority's conclusion also conflicts with long-settled evidence and professional responsibility rules. *See* Fed. R. Evid. 607, Advisory Committee Notes to 1972 Proposed Rules (abandoning the "traditional rule against impeaching one's own witness" because "[a] party does not hold out his witnesses as worthy of belief"); Model R. Prof. Resp. 3.3 and comments (a lawyer will only be responsible for false testimony if the lawyer knew or should have known the testimony was false).

While the Eleventh Circuit has not expressed itself clearly on the issue here, there is no reason to think that it would reach the opposite conclusion. In the Eleventh Circuit case granting Rule 60(b)(3) relief discussed by the majority, *Harre*, 750 F.2d at 1503, the court found "that the record support[ed] Appellants' argument that a material expert witness testified falsely on the ultimate issue in the case, <u>where the defense attorneys knew or should have known of the falsity of the testimony</u>." *Id.* at 1503 (emphasis added). Nothing in *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988), is to the contrary. *Bonar*, a case involving vacation of an arbitrator's punitive damages award, cites *Harre* for the proposition that "[t]here is no doubt that perjury constitutes fraud," and that the perjury is material when it goes to a "central issue" in a case. *Id.* at 1383 n.7 & 1385. The Eleventh Circuit in *Bonar* did not discuss *Harre* in the context of party complicity under Rule 60(b)(3) because *Bonar* did not involve that issue (nor did it involve Rule 60(b)(3) at all).

The majority points to *Viskase Corporation v. American National Can Company*, 261 F.3d 1316 (Fed. Cir. 2001), as supporting its position. *See* Maj. Op. at 15. But

*Viskase* arose in the Seventh Circuit, which explicitly requires evidence of complicity to attribute false testimony of an expert witness to a party under Rule 60(b)(3). *Metlyn*, 763 F.2d at 833. The district court in *Viskase* specifically found that the plaintiff's counsel "surely knew there were additional documents [that had been withheld] and that there were additional tests conducted" relying on evidence such as "invoices directed to [plaintiff's] counsel and [the expert's] notes document[ing] counsel's knowledge." *Viskase Corp. v. Am. Nat. Can Co.*, 979 F. Supp. 697, 705 (N.D. Ill. 1997). There is no similar evidence or finding here.

The majority agrees that JJVC "may have been unaware of Dr. Bielawski's false testimony" but suggests that JJVC may have been complicit in withholding Dr. Bielawski's data from tests on third-party contact lenses. Maj. Op. at 15. According to the majority, "JJVC should have known that additional tests were conducted and additional documents were generated. Indeed, it provided samples of the third-party lenses to Dr. Bielawski, requested that he conduct initial testing on those lenses, and questioned Dr. Bielawski on the same subject matter during trial." *Id.*

While JJVC admitted that it did "suppl[y] [the third party lenses] to Dr. Bielawski," it did so "only for use in setting up his equipment." Appellee's Br. at 28. According to JJVC, it "did not ask Dr. Bielawski to generate data on those lenses, and did not know that one of his assistants had (apparently) done so." *Id.* In fact, JJVC asserts that "Dr. Bielawski repeatedly reassured JJVC's counsel that he had given them all of the data he generated and all of the documents he relied upon." *Id.* at 63. The district court did not resolve this factual dispute as to whether JJVC's counsel should have known that additional evidence existed, finding instead that this "murky" assertion did not support a finding that Rembrandt was

prevented from fully and fairly presenting its case. *Rembrandt*, 300 F.R.D. at 697 n.1.

The majority's resolution of this factual dispute as to whether JJVC's counsel should have known about the withheld documents is inconsistent with our role as a court of review and the deferential "abuse of discretion" standard of review. As we have found, when the lower tribunal has left a factual issue unresolved, "[w]e are unable to engage in such fact-finding in the first instance and must therefore remand for further proceedings." *Nike, Inc. v. Adidas AG*, No. 2014-1719, 2016 WL 537609, at \*14 (Fed. Cir. Feb. 11, 2016). This is a matter for the trial court and, at best, a remand for further fact-finding would be appropriate as to whether JJVC's counsel should have known about the documents.

I respectfully dissent.